[No. 13067–6–I. Division One. June 18, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL L. DIXON, *Appellant.*

---

*Rosemary Bordlemay,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Barbara L. Corey–Boulet, Deputy,* for respondent.

SCHOLFIELD, J.—Michael L. Dixon appeals his juvenile court conviction for indecent liberties, alleging the trial court erred in admitting the victim's written statement, in permitting an 8–year–old child to testify without adminis-

tering an oath or affirmation, and in permitting the victim's sister to testify on rebuttal after she had remained in the courtroom despite a ruling excluding all witnesses.

At approximately 6:30 p.m. on September 14, 1982, Dixon went to the residence of Ms. M. and asked her to accompany him to a nearby gymnasium to play basketball. Ms. M. agreed to meet him after she changed her clothes. Dixon asked for a drink of water and was admitted to Ms. M.'s apartment for that purpose. He was to wait in the living room while she changed clothes in her bedroom. Dixon entered the bedroom while Ms. M. was changing her clothing and asked her to allow him to put handcuffs on her. Ms. M. refused, and a physical struggle ensued, during which Dixon pushed Ms. M. onto her bed and, while holding her facedown on the bed, implored her to have sexual intercourse with him. She refused, but Dixon persisted. Dixon placed his hand under her shirt, felt her breast, and put his hand beneath her underwear. Ms. M. became frightened and screamed. Dixon threatened to hurt her if she told anyone about the episode.

During the struggle, Ms. M. received two telephone calls. Dixon refused to allow her to answer the first call. He did allow her to answer the second call, but warned her not to disclose his presence to the caller. Instead, Ms. M. took the phone and screamed for help. Dixon knocked the phone from her hand and she ran from her apartment screaming. Ms. M.'s screams were overheard by a neighbor, who called the police. Dixon ran from the apartment before the police arrived.

Seattle police officers Hamlin and Lane arrived at the scene at approximately 7:40 p.m. They remained at the scene for more than 2 hours. During the entire 2 hours, Ms. M. was "quite upset and distraught." The officers described Ms. M. as being somewhat hysterical, in tears and having a hard time breathing when they arrived. She spoke to the officers, saying, "He tried to kill me, he tried to kill me." Over a period of approximately 2 hours, the police officers made efforts to get Ms. M. to calm down and at the same

time took from her a written statement containing the details of the attack. The time indicated on the written statement is 8:10 p.m.

When Officer Lane started to testify during direct examination as a witness for the State as to what Ms. M. had reported to her, Dixon's counsel objected on the ground that if the officer recited Ms. M.'s statements to her, this would not be a verbatim statement by Ms. M. but would be a summary set forth in the wording of the witness. Officer Lane then testified that she took a written statement over a period of about 2 hours, during which time Ms. M. continued to be upset. At this point, Dixon's counsel objected very generally, asserting that what Ms. M. said should come in through her testimony and not through a written statement. The trial judge responded that it was simply a question of whether the written statement qualified as an excited utterance and that if it did, it did not make any difference whether Ms. M.'s testimony came in through live testimony or through a written statement. The trial judge suggested that the proper form was to have the statement marked as an exhibit. The court agreed that the contents of the statement would not be read into the record until after cross examination of the officer had been completed. Dixon's counsel requested a continuing objection to the whole statement, but did not specify the basis of the objection. Although defense counsel's objections did not relate directly to whether the statement was qualified as an excited utterance, the trial judge made it clear he was admitting the statement as an excited utterance.

Dixon testified in his own defense. During his testimony, he stated that he had not visited Ms. M.'s apartment on the day before the alleged incident. After Dixon rested, the State called Ms. M.'s sister as a rebuttal witness. Dixon objected to her testimony on the ground that she had been in the courtroom during the trial despite the court's ruling that all witnesses should be excluded from the courtroom until after they had given their testimony. The trial judge overruled the objection on the sole ground that the sister

was being offered as a rebuttal witness. Ms. M.'s sister then testified that she knew Dixon and that Dixon had come to their apartment on the day before the events involved in the case. This testimony was offered to rebut the testimony of Dixon to the contrary.

Breckeen Anderson was called as a witness for the State. Breckeen was 8 years of age. The trial judge directed him to be seated in the witness chair and directed counsel for the State to proceed. The deputy prosecuting attorney suggested that the witness should be sworn, and the court announced that it was not necessary to swear in witnesses "of this age". The deputy prosecuting attorney then asked Breckeen a series of questions to demonstrate that he knew the difference between the truth and a lie and that it was important to tell the truth. She obtained an affirmation from him that his testimony would be the truth. The court interrupted to ask Dixon's counsel if he had any questions relating to the qualifications of the witness, his ability to perceive facts or his ability to tell the truth. Counsel stated he had no objection to the qualifications of the witness. Indeed, he stated no objection at any time.

As his first assignment of error, Dixon asserts that admission of the 4-page statement given by Ms. M. to Officer Lane, taken and reduced to writing over a period of approximately 2 hours commencing at approximately 8:10 p.m. on the date of the offense, was error because the statement was hearsay and did not meet the requirements of the excited utterance exception to the hearsay rule. ER 803 describes specific exceptions to the rule excluding hearsay and ER 803(a)(2) describes an excited utterance as

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

ER 803(a)(2) is a less restrictive rule than the rule stated in *Beck v. Dye*, 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022 (1939).

(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way

characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

*Beck v. Dye, supra* at 9–10.

An excited utterance is made an exception to the rule excluding hearsay on the theory that the declarant, being under the stress of excitement caused by the startling event, is much less likely to consciously fabricate. The stressful circumstances are believed to operate to temporarily overcome the ability to reflect and consciously fabricate. The reliability and probable truthfulness of excited utterances distinguish them from ordinary hearsay. *State v. Whyde,* 30 Wn. App. 162, 632 P.2d 913 (1981); *United States v. Knife,* 592 F.2d 472 (8th Cir. 1979); Annot., 48 A.L.R. Fed. 451 (1980); 5A K. Tegland, Wash. Prac. § 361 (2d ed. 1982); E. Cleary, *McCormick on Evidence* § 297 (2d ed. 1972); 6 J. Wigmore, *Evidence* § 1749 (rev. 1976), where the author states:

> This circumstantial guarantee here consists in the consideration, already noted (§1747 *supra*), that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief. The utterance, it is commonly said, must be "spontaneous," "natural," "impulsive," "instinctive," "generated by an excited feeling which extends without let or breakdown from the moment of the event they illustrate."

■ *Beck v. Dye, supra,* referred to this exception as the res gestae rule. Wigmore refers to it as "spontaneous exclamations". ER 803(a)(2) describes it as an "excited utterance". The different terms refer to the same basic rule. Although ER 803(a)(2) is not as restrictive as the requirements of the common law exception, nevertheless, ER 803(a)(2) should be interpreted in a sufficiently restrictive manner as not to lose sight of the basic elements which distinguish excited utterances from other hearsay statements. This is necessary in order to preserve the real purpose of the exception and prevent its application where the factors guaranteeing trustworthiness are not present.

Pre–rule as well as post–rule cases emphasize the requirement of spontaneity. *Robbins v. Greene,* 43 Wn.2d 315, 321, 261 P.2d 83 (1953); *State v. Woodward,* 32 Wn. App. 204, 206, 646 P.2d 135 (1982); *State v. Bouchard,* 31 Wn. App. 381, 383, 639 P.2d 761 (1982).

The passage of time between the startling event and the alleged excited utterance is a factor to be considered by a court exercising discretion to admit into evidence an alleged excited utterance. *State v. Woodward, supra* at 206–07. Speaking generally, the more time that passes will usually increase the likelihood that the controlling stress of the event has lessened and the ability of the declarant to think and fabricate has been recovered.

The 4–page statement given by Ms. M. to Officer Lane covers fully the details of this incident from Dixon's arrival at her front door to her being able to break away from him and escape from the apartment. At the end of the statement, several lines of additional details are added with the explanation that Ms. M. remembered them after giving 3½ pages of her statement. The statement, because of its length and completeness, would be impossible to distinguish from a statement routinely given police by crime victims.

If Ms. M.'s statement to the police were to be admissible as an excited utterance simply because she was "upset", virtually any statement given by a crime victim within a

few hours of the crime would be admissible because many crime victims remain upset or frightened for many hours, and even days and months, following the experience.

A declarant who is able to give a detailed and complete description of an event is giving a "narrative of a past, completed affair" which *Beck v. Dye, supra* at 9, did not permit. *Beck* also required the statement to be "a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design . . .". 200 Wash. at 9–10. A reading of Ms. M.'s statement makes it obvious that she had the ability to recall and narrate the details of her experience with Dixon. Other than being described as "upset", there is nothing to indicate that her ability to reason, reflect, and recall pertinent details was in any way impeded. The statement gives every indication that, if motivated to do so, Ms. M. could have fabricated some of the details. Under these circumstances, we have no basis for finding a guaranty of trustworthiness, which is the ultimate basic ingredient which must be present in order to qualify a statement as an excited utterance.

We conclude that the trial court went too far in admitting this detailed 4–page statement as an excited utterance. Care must be exercised in this area because in those cases where it is the victim's word against that of the defendant, the State, when a statement in complete detail is admitted as an excited utterance, gets the victim's version before the jury twice—once through the direct testimony of the victim and a second time through admission of the written statement or the testimony of a witness to whom the victim related the details of the offense.

■ We conclude that the admission of Ms. M.'s statement as an excited utterance was error. However, this was a trial to the court, which raises the question as to whether the error was harmless. The trial judge heard essentially the same details testified to by Ms. M. as were included in the written statement. The testimony of Ms. M. was unimpeached, while the testimony of Dixon was impeached. The

error involved here was not of constitutional dimension. Therefore, the error is not prejudicial if, within reasonable probabilities, the error did not affect the outcome of the trial. *State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). It is highly probable that the trial judge would have reached the same result in this case even if the 4–page written statement of Ms. M. had been rejected. We find the error was harmless.

Dixon contends that the trial court erred in permitting 8–year–old Breckeen Anderson to testify, without requiring him to take an oath or affirmation declaring that he would testify truthfully, citing ER 603 and *In re Ross,* 45 Wn.2d 654, 277 P.2d 335 (1954).

ER 603 requires that every witness be administered an oath or affirmation. ER 603 provides:

> Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so.

In *In re Ross, supra,* the court held that prejudicial error occurred in a parental deprivation proceeding when the trial judge failed to comply with a request that witnesses be sworn.

In *In re Ross, supra,* however, the court also stated:

> This statement is not to be tortured into a holding that all witnesses must be sworn in all juvenile court proceedings. It has long been recognized that informality and friendly discussion can, under many circumstances, attain the best results with juveniles and their parents.

45 Wn.2d at 655. Similarly, it is not necessary that a *formal* oath or affirmation be administered to a child of tender years. *State v. Collier,* 23 Wn.2d 678, 694, 162 P.2d 267 (1945); *State v. Johnson,* 28 Wn. App. 459, 461, 624 P.2d 213 (1981), *aff'd,* 96 Wn.2d 926, 639 P.2d 1332 (1982).

In this case, the trial court did not administer an oath or affirmation, formal or otherwise, to Breckeen Anderson. The deputy prosecuting attorney did ask the child a series of questions, however, regarding his understanding of the

difference between truth and falsity. She also asked Breckeen whether he knew that it was important to tell the truth in court that day and whether he would do so. Breckeen's answers demonstrated that he understood the difference between truth and falsity. Breckeen also stated that he knew it was important to tell the truth in court and that he would indeed tell the truth.

After the deputy prosecuting attorney's preliminary questions to Breckeen, the trial judge asked Dixon's counsel whether he had any questions about Breckeen's ability to perceive the events that he had witnessed or about his ability to tell the truth. Dixon's counsel stated that he had none. Breckeen then testified that he "sort of" heard someone screaming but could not tell if it were a boy or a girl and that he saw a male person run downstairs from the direction of Ms. M.'s apartment but could not see the person's face and did not know if the person were white or black. Dixon's counsel cross–examined Breckeen.

ER 603 states that the purpose of an oath or affirmation is to awaken the witness' conscience and impress his mind with the duty to tell the truth. From our review of the record, we conclude that Breckeen Anderson's conscience was awakened and that his mind was impressed with the duty to tell the truth. We hold that the requirements of ER 603 are met when a child demonstrates an understanding of the difference between truth and falsity, is adequately apprised of the importance of telling the truth and declares that he will do so. *See State v. Johnson, supra* at 461.

We also hold that Dixon's failure to object at trial waived any error. In both *In re Ross, supra* and *State v. Collier, supra,* counsel objected at trial to the failure to administer an oath or affirmation. In this case, Dixon's counsel expressly stated that he had no such objections.

Dixon also contends that the trial court abused its discretion in allowing Ms. M.'s sister to testify in rebuttal after she had remained in the courtroom during all or a portion of the trial in violation of an order excluding witnesses. Dixon argues that the trial court abused its discre-

tion because the testimony of Ms. M.'s sister may have been influenced by the testimony of previous witnesses. Ms. M.'s sister testified that Dixon had visited Ms. M.'s apartment on the day before the alleged incident, rebutting Dixon's testimony to the contrary.

▮ The decision to allow a witness to testify who has violated an order excluding witnesses lies within the broad discretion of the trial court, and will not be disturbed absent a manifest abuse of discretion. *State v. Grant,* 77 Wn.2d 47, 51, 459 P.2d 639 (1969); *State v. Fairfax,* 42 Wn.2d 777, 779, 258 P.2d 1212 (1953); *State v. Walker,* 19 Wn. App. 881, 883, 578 P.2d 83, *review denied,* 90 Wn.2d 1023 (1978); *State v. Bergen,* 13 Wn. App. 974, 978, 538 P.2d 533 (1975), *review denied,* 86 Wn.2d 1009 (1976).

Dixon contends only that Ms. M.'s sister may have been influenced by the testimony of previous witnesses. Dixon does not contend, and the record does not suggest, that the deputy prosecuting attorney violated the order excluding witnesses in bad faith. The record does not contradict the State's argument that it did not plan to call Ms. M.'s sister as a witness and that it did not anticipate that Dixon would testify that he did not visit Ms. M.'s apartment on the day before the alleged incident. The testimony of Ms. M.'s sister appears to have been true rebuttal testimony offered in reply to a new matter raised by the defense not anticipated by the State. We find no abuse of discretion under these circumstances.[1]

Finally, Dixon contends that the cumulative effect of the trial errors asserted in this appeal was to deny him a fair trial. Our disposition of those alleged errors reveals that there was no cumulative effect and that Dixon did receive a

---

[1]The trial judge appears to have based his ruling allowing Ms. M.'s sister to testify solely on the ground that she was called as a rebuttal witness. The mere fact that a witness is called as a rebuttal witness is not sufficient to allow the witness to testify after violating an exclusion order. *See State v. White,* 74 Wn.2d 386, 394-95, 444 P.2d 661 (1968); *State v. Fairfax,* 42 Wn.2d 777, 779, 258 P.2d 1212 (1953); *State v. Bergen,* 13 Wn. App. 974, 978, 538 P.2d 533 (1975), *review denied,* 86 Wn.2d 1009 (1976).

fair trial.

Judgment affirmed.

SWANSON and ANDERSEN, JJ., concur.