[No. 8733–6–III.   Division Three.   November 8, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. MIGUEL ANTONIO BARGAS, *Appellant*.

*Robert P. Kingsley,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Patricia Thompson, Deputy,* for respondent.

THOMPSON, C.J.—Miguel Antonio Bargas appeals his conviction for first degree rape. He argues the trial court improperly admitted hearsay testimony and incorrectly instructed the jury. We affirm.

J.L. lived with her two children in an apartment in a large complex in Spokane. She testified that after she and her children had gone to bed on August 31, 1986, she was awakened by the sound of her back door opening, and footsteps on her stairs. She said a man entered her bedroom and addressed her by the wrong name. He left when she told him to, but he later returned and raped her. She testified the man fled when neighbors arrived and parked their car under the bedroom window.

J.L. spoke to her neighbors and then went back to sleep on her couch with a heavy pipe nearby for protection. The next day, she took a bath and talked with a friend before reporting the attack to police. The investigating officer, Connie Caler, found a hat, a beer bottle, and a set of keys

in J.L.'s bedroom. At trial an expert testified Mr. Bargas' fingerprint was on the bottle.

Mr. Bargas was arrested several weeks later, after J.L. observed him at a restaurant and the police traced the hat to Mr. Bargas' place of work.

Mr. Bargas testified he had attended a company picnic earlier that day, and had gone to the apartment complex to see a friend. He said he could not find the friend, and knocked at J.L.'s door, spoke with her for a few minutes, and left. He denied touching J.L. A jury found Mr. Bargas guilty, and he was sentenced within the standard range to 51 months in prison. This appeal follows.

At trial, Officer Caler, over defense objection, was allowed to testify to details of J.L.'s statement at her initial interview. The first issue is whether Officer Caler's testimony regarding the victim's statements the day after the alleged attack was inadmissible hearsay. The State argues the recount of J.L.'s statements was not hearsay under ER 801(d)(1)(ii), which provides:

> **(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—
> (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, . . .

A statement that merely corroborates a witness' earlier testimony is generally inadmissible as irrelevant under ER 401–403. *State v. Harper,* 35 Wn. App. 855, 857, 670 P.2d 296 (1983), *review denied,* 100 Wn.2d 1035 (1984). However, the rule allows admission of a witness' out–of–court statements to rehabilitate testimony that has been impugned by a suggestion of recent fabrication. *State v. Stark,* 48 Wn. App. 245, 249, 738 P.2d 684, *review denied,* 109 Wn.2d 1003 (1987). Cross examination alone does not justify admission of prior consistent statements; the questioning must raise an inference sufficient to allow counsel to

argue the witness had a reason to fabricate her story later. *State v. Dictado,* 102 Wn.2d 277, 290, 687 P.2d 172 (1984). The prior statement must have been made *before* a motive to falsify has arisen. *State v. Stubsjoen,* 48 Wn. App. 139, 146, 738 P.2d 306, *review denied,* 108 Wn.2d 1033 (1987).

The State contends defense counsel's cross examination of J.L. raised the inference she "was not being completely truthful". A review of the cross examination indicates counsel did attempt to reveal inconsistencies in her statements. However, the questioning did not raise any inference that J.L. had fabricated a story *after* her statements to Officer Caler. Indeed, based on Mr. Bargas' testimony, the defense theory was that J.L. had fabricated her story from the inception, even *before* her statements to the officer. The defense's attempt to point out inconsistencies in the victim's testimony did not raise an inference of recent fabrication. The statements were not admissible on that basis.

Alternatively, the State argues the statements were admissible under the "excited utterance" exception to the hearsay rule. ER 803(a)(2). The "excited utterance" exception is a less restrictive rule than the 6–part "res gestae" test articulated in *Beck v. Dye,* 200 Wash. 1, 9–10, 92 P.2d 1113, 127 A.L.R. 1022 (1939); *State v. Slider,* 38 Wn. App. 689, 691, 688 P.2d 538 (1984), *review denied,* 103 Wn.2d 1013 (1985); *State v. Dixon,* 37 Wn. App. 867, 871, 684 P.2d 725 (1984). Nevertheless, the rule should be interpreted restrictively enough to "preserve the real purpose of the exception . . .", *Dixon,* at 873, which is based on

the theory that the declarant, being under the stress of excitement caused by the startling event, is much less likely to consciously fabricate. The stressful circumstances are believed to operate to temporarily overcome the ability to reflect and consciously fabricate. The reliability and probable truthfulness of excited utterances distinguish them from ordinary hearsay. *State v. Whyde,* 30 Wn. App. 162, 632 P.2d 913 (1981); *United States v. Knife,* 592 F.2d 472 (8th Cir. 1979); Annot., 48 A.L.R. Fed. 451 (1980); 5A K. Tegland, Wash. Prac. § 361 (2d

ed. 1982); E. Cleary, *McCormick on Evidence* § 297 (2d ed. 1972); 6 J. Wigmore, *Evidence* § 1749 (rev. 1976), . . . *Dixon,* at 872. Passage of time between the event and the statement is a factor to be considered, *State v. Woodward,* 32 Wn. App. 204, 206–07, 646 P.2d 135, *review denied,* 97 Wn.2d 1034 (1982), but it is essential only that the out–of–court statement be spontaneous, before the declarant has had "an opportunity to calm down and reflect on the events . . ." *Brown v. Spokane Cy. Fire Protec. Dist. 1,* 100 Wn.2d 188, 195, 668 P.2d 571 (1983). Thus, a rape victim's statements, while still in "a state of emotional turmoil" several hours after the attack, were admissible, *State v. Fleming,* 27 Wn. App. 952, 958, 621 P.2d 779 (1980), *review denied,* 95 Wn.2d 1013 (1981), but a 4–page statement giving details of an event was not. *Dixon,* at 873; *see State v. Sellers,* 39 Wn. App. 799, 804, 695 P.2d 1014, *review denied,* 103 Wn.2d 1036 (1985).

Here, J.L. made her statements after having gone back to sleep, bathing, and talking with her friend. Officer Caler said it took a few minutes to calm the victim before taking her statement, which included details of the attack as well as a description of her attacker and his clothing. Under these circumstances, the statement cannot be characterized as spontaneous. "The statement, because of its length and completeness, would be impossible to distinguish from a statement routinely given police by crime victims." *Dixon,* at 873. The statements were not admissible as "excited utterances".

Mr. Bargas argues he was prejudiced by the erroneous admission, because the hearsay statements improperly emphasized J.L.'s uncorroborated testimony. We note, however, that J.L.'s testimony was corroborated in part by Officer Caler's observation of a scratch and bite mark on the victim, and by the evidence found in the bedroom.

■ In addition, our review of the record shows defense counsel cross–examined J.L. repeatedly about her statements to Officer Caler, and effectively pointed out inconsistencies between those statements and her testimony at

trial. Counsel further emphasized these inconsistencies in cross examination of Officer Caler. In view of defense counsel's own efforts to elicit details of the hearsay statements, and in view of the hearsay declarant's presence at trial, *Vanderhoff v. Fitzgerald*, 72 Wn.2d 103, 108, 431 P.2d 969 (1967),[1] we fail to see how Mr. Bargas was prejudiced by the erroneous admission. A nonconstitutional error is cause for reversal only if we can conclude that, within reasonable probabilities, the outcome of the trial would have been materially different had the error not occurred. *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). On that basis, we hold the error in admission was harmless.

The second issue is whether the court erred in failing to instruct the jury on the specific crime the defendant allegedly intended to commit when he entered the apartment. Mr. Bargas was convicted pursuant to RCW 9A.44.040-(1)(d), which provides:

> (1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator or an accessory:
>
> . . .
>
> (d) Feloniously enters into the building or vehicle where the victim is situated.

The court instructed the jury in the words of the statute and further defined felonious entry:

> A person feloniously enters if that person enters into a building with the intent to commit a crime against a person or property therein and the person entering is not then licensed, invited, or otherwise privileged to enter that building.

*See* WPIC 40.03. Although the State earlier had identified rape as the crime it alleged Mr. Bargas intended to commit when he entered the apartment, the defense failed to request a more specific instruction.

---

[1] J.L.'s submission to full and effective cross examination satisfies the requirements of the confrontation clause of the Sixth Amendment. *California v. Green*, 399 U.S. 149, 158–62, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970). The error here thus was not of constitutional dimension.

The precise issue to be decided here is whether the failure to instruct what specific crime the accused intended to commit is a "manifest error affecting a constitutional right", thus permitting appellate consideration for the first time on review. RAP 2.5(a)(3). We find the rationale in *State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985) applies equally here and therefore no constitutional violation occurred. *Bergeron,* at 16. Mr. Bargas lost his right to raise the issue by failing to propose a specific instruction. *State v. Parker,* 97 Wn.2d 737, 742, 649 P.2d 637 (1982).

This case requires the court to determine the applicability of two recent conflicting Supreme Court decisions. In *State v. Bonds,* 98 Wn.2d 1, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831, 78 L. Ed. 2d 112, 104 S. Ct. 111 (1983), the defendant was convicted of murder, rape, and burglary, all in the first degree. The jury instructions on the rape charge failed to specify what crime the defendant allegedly intended to commit when he entered the building. The court concluded this failure improperly permitted jurors to speculate among "the entire catalog of criminal offenses", but held the error harmless. *Bonds,* at 18. The *Bonds* rationale later was adopted in *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983), a burglary prosecution. However, in *Bergeron,* another burglary case, the court overruled *Johnson,* holding:

> The intent to commit a specific named crime inside the burglarized premises is not an "element" of the crime of burglary in the State of Washington. . . . The intent required by our burglary statutes is simply the intent to commit any crime against a person or property inside the burglarized premises.

*Bergeron,* at 4. The court quoted with approval the *Johnson* dissent:

> Knowledge of criminal intent usually resides exclusively in the mind of the defendant. He may unlawfully enter a building with the intent to commit a certain crime, and ultimately commit a different crime, or no crime at all. He is nonetheless guilty of burglary. In either case, the State would be hard pressed to

prove entry with intent to commit a crime if it were required to specify exactly which of several crimes available to the defendant he intended to commit. Such a requirement would seriously weaken the enforcement of burglary laws.

*Bergeron,* at 10–11 (quoting *Johnson,* at 632–33 (Rosellini, J., dissenting)).

■ We recognize that *Bergeron's* scope may be limited on several bases, *see* Note, *Criminal Law,* 21 Gonz. L. Rev. 831 (1985–1986). Nonetheless, we hold that *Bergeron* applies here for two reasons. First, the *Bonds* rationale logically cannot survive *Bergeron.* Second, the Supreme Court recently indicated the *Bergeron* rationale will apply in other contexts as well. *See State v. Jeffries,* 105 Wn.2d 398, 419–20, 717 P.2d 722, *cert. denied,* 479 U.S. 922, 93 L. Ed. 2d 301, 107 S. Ct. 328 (1986). We conclude *Bergeron* impliedly overruled *Bonds* to the extent it is inconsistent. Under this analysis, the court did not err in failing to instruct the jury as to the specific crime Mr. Bargas allegedly intended to commit upon entering J.L.'s apartment.

We affirm Mr. Bargas' conviction.

GREEN and MUNSON, JJ., concur.

Review denied by Supreme Court February 28, 1989.