# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52057-5-II |
| Respondent, | |
| v. | |
| JAMES MICHAEL MILLS, JR., | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — James Michael Mills Jr. appeals his convictions for second degree assault-domestic violence and felony harassment–domestic violence.

Mills argues that (1) the trial court erred when it permitted two police officers to testify regarding statements the victim made to them and (2) the court's error was not harmless because his convictions for second degree assault and felony harassment could not be sustained by the remaining evidence.

We hold that the trial court properly admitted the hearsay statements under the excited utterance exception, and we affirm the convictions.

## FACTS

### I. BACKGROUND

Mills and Jessica Lynn Elhardt had been romantically involved, and in January 2018, they were considering reestablishing their relationship. On January 6, 2018, Elhardt picked Mills up from a friend's house in Malone, Washington. The moment she arrived, it was apparent to Elhardt

that Mills was angry at Elhardt because she was late. Elhardt asked Mills to leave the car and he refused. Feeling that she had no choice but to take him with her, Elhardt began driving and decided that she would find somewhere to drop him off on the way.

As Elhardt drove, Mills screamed at her and called her names. He also grabbed Elhardt by the throat and squeezed; he seized the steering wheel and jerked it, forcing the car into the lanes for oncoming traffic; and he shoved his head aggressively against hers, forcing her head into the driver's side window. Each of these acts occurred several times.

Elhardt decided to drive to the Lucky Eagle Casino knowing that it would be open late and hoping that Mills might know someone there so that he would be more inclined to leave her car. Officer Chance Sicilia with the Chehalis Tribal Police Department was patrolling the casino parking lot at 3:17 AM when Elhardt drove her car straight toward him, yelling at him for help and telling him that the man in the passenger seat had just assaulted her. Sicilia ordered Mills out of the car and had him sit on the curb. Recalling that her car had been stolen from that casino previously and that she only just got it back, Elhardt was "apprehensive" about leaving it unattended and moved her car to the top of the casino parking garage. Verbatim Report of Proceedings (VRP) (March 6, 2018) at 26. She then walked down from the top of the parking garage to find Sicilia—a process that took about 5 to 10 minutes.

While Sicilia spoke to Elhardt, he noticed that she "was pretty shaken up" and "really nervous" and that she was "physically shaking." *Id.* at 42-43. Elhardt told Sicilia that she was "in imminent fear for her life" and that Mills had said he wanted to kill her and that he did not care whether he went to prison for it. *Id.* at 43. At some point, Sicilia took a written statement from

2

Elhardt. He also noticed that Elhardt had "a little red bump underneath her right eye and she had some slight redness around her neck area." *Id.* at 44.

After speaking with Elhardt, Sicilia contacted Deputy Dan Wells of the Grays Harbor County Sheriff's Office to continue the investigation of the incident. Wells arrived at the casino at about 4:20 or 4:30 AM. After briefly speaking with Sicilia, Wells spoke with Elhardt. Wells noted that as he spoke to her, Elhardt had some redness under her neck, but he did not notice any fingerprints at that time.

## II. TRIAL

The State charged Mills with second degree assault-domestic violence, felony harassment-domestic violence, and interfering with the reporting of domestic violence. The case proceeded to a bench trial.

Prior to trial, the State told the court that it would seek to admit Elhardt's statements to Sicilia and Wells as excited utterances.

During her testimony, Elhardt could not recall whether Mills made a statement threatening to kill her. Elhardt testified that about four days after the incident, she experienced pain underneath her jawline and noticed yellow-green fingerprint-like bruises on the right side of her jaw.

Sicilia testified that as he spoke to Elhardt, he observed that she "was pretty shaken up" and "really nervous" and that she was "physically shaking." *Id.* at 42-43. Over Mills's objection, the trial court allowed Sicilia to testify that Elhardt told him that she was "in imminent fear for her life" and that Mills had said he wanted to kill her and that he did not care whether he went to prison for it. *Id.* at 43.

Wells also testified about Elhardt's statements. He recalled that as he spoke with Elhardt, "it was obvious that she was still scared" based on his observation of "her reaction" and the fact that "[s]he'd look at the car which Mr. Mills was in," because it was only "a little while after everything had happened." *Id.* at 50. But he believed that Elhardt was "more confident" when she spoke to him that night than when she testified at trial, and she had no confusion or problems telling him what happened. *Id.*

Over Mills's objection, the trial court allowed Wells to testify that Elhardt told him that Mills had threatened to kill her. Elhardt told Wells that Mills choked her on two occasions, that the second time was worse, and that she was unable to breathe for about 15 seconds. Wells also testified that in his experience, which included 29 years with the Grays Harbor County Sheriff's Office, injuries are not always immediately apparent, but they may become visible 2 to 3 days after an injury is sustained.

The trial court found Mills guilty of second degree assault-domestic violence based on strangulation, felony harassment-domestic violence, and interference with reporting of domestic violence. Mills appeals only his convictions for second degree assault-domestic violence and felony harassment-domestic violence.

DISCUSSION

Mills argues that the trial court abused its discretion when it allowed Officer Sicilia and Deputy Wells to testify regarding Elhardt's out-of-court statements under the excited utterance hearsay exception because the statements lacked the requisite spontaneity and could have been a product of fabrication, intervening actions, or the exercise of choice or judgment. The State responds that the trial court properly admitted Elhardt's statements as excited utterances because

4

Elhardt made the statements while she was experiencing continuous stress from the event. We hold that the trial court did not abuse its discretion in admitting Elhardt's statements as excited utterances.

A. LEGAL PRINCIPLES

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Statements that fall within that definition are inadmissible unless an exception to the rule applies. ER 802. "Excited utterances" are recognized as an exception and refer to statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2).

Hearsay may be admitted under the excited utterance exception if three requirements are satisfied: (1) a startling event or condition occurred, (2) the statement was made under the stress of the startling event or condition, and (3) the statement related to the startling event or condition. *State v. Ohlson*, 162 Wn.2d 1, 8, 168 P.3d 1273 (2007). The first and second requirements can be established by circumstantial evidence such as "the declarant's behavior, appearance, and condition; appraisals of the declarant by others; and the circumstances under which the statement is made." *State v. Young*, 160 Wn.2d 799, 810, 161 P.3d 967 (2007). "Complete spontaneity is not required," so the key consideration is not how much time has passed between the statement and the event. *State v. Doe*, 105 Wn.2d 889, 893, 719 P.2d 554 (1986).

To determine whether the exception applies, the critical inquiry is often "whether the statement was made while the declarant was still under the influence of the event to the extent that

5

the statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment." *State v. Woods*, 143 Wn.2d 561, 597, 23 P.3d 1046 (2001)

A trial court's decision to admit hearsay testimony under the excited utterance exception is reviewed for an "abuse of discretion." *State v. Thomas*, 150 Wn.2d 821, 854, 83 P.3d 970 (2004). Abuse of discretion exists where a ruling "'is manifestly unreasonable or based on untenable grounds or reasons.'" *State v. Garcia*, 179 Wn.2d 828, 846, 318 P.3d 266 (2014) (internal quotation marks omitted) (quoting *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012)).

B. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING ELHARDT'S STATEMENTS UNDER THE EXCITED UTTERANCE EXCEPTION

Mills disputes only the second element of the excited utterance test, arguing that the trial court erroneously relied on evidence regarding Elhardt's demeanor as dispositive without adequately considering whether the statements were spontaneous. Relying on *State v. Dixon*, 37 Wn. App. 867, 873-74, 684 P.2d 725 (1984), Mills claims that evidence that the declarant was "upset" is an insufficient basis on which to admit the statements. Br. of Appellant at 8. Instead, Mills argues, evidence that Elhardt provided detailed statements to both officers, appeared confident in her recollection at the time, and had the ability to reason and reflect when she moved her car shows that her statements were not sufficiently spontaneous or trustworthy to meet the exception.

In *Dixon*, the court held that a four-page, written statement could not be admitted as an excited utterance even though the declarant was "upset" while the statement was made. 37 Wn. App. at 874. The challenged hearsay evidence consisted of a complete, written narrative detailing the entire event, taken over a two-hour period, as police tried to calm the declarant who was "'quite

upset and distraught'" after suffering an attack. *Id.* at 869. Beyond her emotional state, there was no evidence to suggest that the victim lacked an ability to "reason, reflect, and recall pertinent details" nor was there any indication that the statement itself was the product of a "'spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself.'" *Id.* at 874 (quoting *Beck v. Dye*, 200 Wash. 1, 9, 92 P.2d 1113 (1939)). Absent that showing of spontaneity, the court held that the statement lacked the "guaranty of trustworthiness, which is the ultimate basic ingredient" necessary to qualify a hearsay statement as an excited utterance. *Id.* Thus, "the trial court went too far in admitting this detailed 4-page statement as an excited utterance." *Id.*

Mills argues that his case is analogous to *Dixon* because Elhardt's statements were not spontaneous and lacked sufficient indicia of trustworthiness. He emphasizes that like the written statement in *Dixon*, Elhardt conveyed detailed information to both officers. He further highlights Wells's testimony that Elhardt appeared confident in her recollection and did not exhibit confusion or difficulty in recalling the events on the night of the incident. We disagree with Mills.

First, this case is distinguishable from *Dixon* because there, the trial court "went too far in admitting this detailed 4-page statement" as an excited utterance. *Id.* at 874. But here, the State sought only to admit testimony from both officers regarding statements that Elhardt made to them shortly after the event occurred. The officers' testimony did not contain the same breadth or narrative detail as the four-page written document that the *Dixon* court determined stretched the boundaries of the excited utterance exception too far. *Id.* And mere presence of some detail in a victim's statement does not foreclose it from being admitted under this exception. *See, e.g.*, *State v. Majors*, 82 Wn. App. 843, 848-49, 919 P.2d 1258 (1996) (holding that a victim's statements

were admissible as excited utterances although they were detailed and gave the defendant's license plate number).

In addition, Mills asserts that Elhardt had the wherewithal to move her car to prevent it from being stolen before she spoke with either officer, rendering her capable of reason and reflection when she made the statements. Mills claims that the ability to reason and reflect negates the spontaneity required to establish that a statement qualifies as an excited utterance and creates a possibility that the statements were instead the "result of fabrication, intervening actions, or the exercise of choice or judgment." Br. of Appellant at 10. In light of these facts, he argues, the trial court abused its discretion when it relied solely on the officers' testimony regarding Elhardt's demeanor to admit the statements.

Though Mills is correct in identifying that "[t]he key to the second element is spontaneity," none of his contentions undercut the trial court's sound discretion in determining that Elhardt's statements were spontaneous, excited utterances. *State v. Chapin*, 118 Wn.2d 681, 688, 826 P.2d 194 (1992). The spontaneity requirement is not strictly construed to mean that a statement must be made either at the same time or soon after the startling event in order to qualify as an excited utterance. *State v. Flett*, 40 Wn. App. 277, 287, 699 P.2d 744 (1985) ("The passage of time between the startling event and the alleged excited utterance is a factor to be considered by a court exercising discretion to admit into evidence an alleged excited utterance, . . . but is not solely determinative."). For example, in *State v. Strauss*, 119 Wn.2d 401, 416-17, 832 P.2d 78 (1992), statements were properly admitted as excited utterances more than three hours after the startling event.

Instead, courts are primarily concerned that as the length of time between the startling event and the statement increases, so too does the declarant's opportunity to engage in reflective thought, heightening the risk of fabrication. *Chapin*, 118 Wn.2d at 688. Accordingly, the critical issue is "'whether the statement was made while the declarant was still under the influence of the event to the extent that the statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.'" *Doe*, 105 Wn.2d at 893 (quoting *Johnston v. Ohls*, 76 Wn.2d 398, 406, 457 P.2d 194 (1969)).

We further disagree with Mills's contention that Elhardt's decision to move her car to avoid having it stolen rendered her statements inadmissible. The stress of the event was ongoing for Elhardt. In *Flett*, the trial court did not abuse its discretion in admitting statements made after the declarant went to work and approximately seven hours after the startling event because of the "continuing stress experienced and exhibited by the victim." 40 Wn. App. at 287. In contrast, evidence that a statement was made after the declarant was "calm" and "had engaged in [their] usual activities" following the startling event may increase the "danger of fabrication." *Chapin*, 118 Wn.2d at 689. But Mills cites to no authority that holds that there must be a complete absence of any signs of rational thought following a startling incident to qualify a statement as an excited utterance.

The fact that Elhardt moved her car shortly after the assault can be just as easily construed as an irrational act or a product of scattered thinking as it can a calculated choice. The trial court retains discretion to interpret this fact as it relates to the credibility of Elhardt's statements within the excited utterance exception. *See State v. Magers*, 164 Wn.2d 174, 188, 189 P.3d 126 (2008) (holding that the trial court did not abuse its discretion when it weighed the credibility of a victim's

statements in light of the circumstances and admitted them as excited utterances, despite the fact that one statement was a falsehood).

Additionally, Sicilia testified that Elhardt "was pretty shaken up. She was just really nervous" and that "[s]he was physically shaking" when she spoke to him soon *after* moving her car. VRP (March 6, 2018) at 42-43. Wells similarly testified that when he spoke to Elhardt "it was obvious that she was still scared" based on her reaction and the fact that "she'd look at the car which Mr. Mills was in." *Id.* at 50. It is clear to us that in the 5 to 10 minutes it took for Elhardt to move her car, the stress of the event did not cease to affect her.

We are satisfied that Elhardt's statements were sufficiently reliable and spontaneous given the recentness of the stressful event, as well as the officers' testimony that Elhardt was physically shaking and appeared obviously scared after she returned from moving her car. Admission of hearsay statements is reviewed for an abuse of discretion and a trial court's decision will not be reversed unless "'no reasonable judge would have made the same ruling.'" *Ohlson*, 162 Wn.2d at 8 (quoting *Woods*, 143 Wn.2d at 595-96). Mills has not made this required showing. Therefore, we hold that the trial court did not abuse its discretion in admitting the officers' hearsay testimony under the excited utterance exception.

## CONCLUSION

Elhardt's statements to police officers qualify as excited utterances exempt from the rule against hearsay and are admissible. We conclude that the trial court did not abuse its discretion in admitting the officers' testimony regarding statements that Elhardt made to them. Because there

No. 52057-5-II

was no error, Mills's convictions for second degree assault-domestic violence and felony harassment- domestic violence are affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, A.C.J.

11