**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 81581-4-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| MATTHEW SCOTT LEARNED, | |
| Appellant. | |

APPELWICK, J. — Learned appeals from a judgment and sentence for second degree assault - domestic violence.  He argues the trial court improperly admitted the victim's out-of-court statements.  He further contends the State committed prosecutorial misconduct in its rebuttal.  Finally, he argues newly discovered evidence required a new trial.  We affirm.

FACTS

Matthew Learned was charged with second degree assault - domestic violence and unlawful imprisonment - domestic violence for events occurring between October 2, 2019 and October 16, 2019.  Learned and the victim, Mary Gomez, had previously been in a relationship.

A witness at trial, Jennifer Kasik, testified that on October 16, 2019 she received a call from her daughter who had encountered Gomez on the street.  Kasik left her house and soon found a "visibly scared" Gomez on the sidewalk a few blocks away.  Kasik called the 911 emergency system and relayed statements

from Gomez to the dispatcher. Gomez identified Learned as her boyfriend and said that he "beat her up." She said Learned lived in a nearby trailer. Responding law enforcement noted Gomez "looked like she had been beaten up severely." She had significant injuries to her head, face, and body, including two swollen shut black eyes.

When Learned arrived at his residence, law enforcement were already present. Learned was detained and agreed to speak to police. He said his ex-girlfriend, Gomez, had been staying in his trailer for two weeks. He denied that Gomez had been held captive.

Gomez did not testify at trial. Defense counsel moved to exclude her out-of-court statements as inadmissible hearsay. The court admitted the statements she made prior to the 911 call as well as a portion of the 911 call recording.

In its rebuttal, the State described Learned as being, by the defense's theory of the case, "the unluckiest man in this world." Defense counsel did not object to the remarks.

The jury found Learned guilty of second degree assault - domestic violence. Near the end of the trial, Learned's investigator received a text message. The sender identified themselves as Gomez, writing in part "I don't remember [Learned] as my abuser." Learned moved for a new trial and the court denied the motion. The investigator received another text message addressed from Gomez stating Learned was not the person who hurt her. Learned filed another motion for a new trial, which the court denied.

Learned appeals.

DISCUSSION

First, Learned argues the trial court improperly admitted Gomez's out-of-court statements. Next, he argues the State committed prosecutorial misconduct in its closing argument. Finally, he argues newly discovered evidence required a new trial.

I. Hearsay

Learned argues Gomez's out-of-court statements should not have been admitted as excited utterances.

We review a trial court's decision to admit evidence for abuse of discretion. Brundridge v. Fluor Fed. Servs., Inc., 164 Wn.2d 432, 450, 191 P.3d 879 (2008). "Discretion is abused if it is exercised on untenable grounds or for untenable reasons." State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

"Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted. ER 801. Hearsay is not admissible except as provided by court rules or by statute. ER 802. A trial court may admit hearsay as an excited utterance if it is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). A party may establish whether the declarant made the statement while under the stress of the event by circumstantial evidence "such as the declarant's behavior, appearance, and condition, appraisals of the declarant by others, and the circumstances under which the statement is made." State v. Young, 160 Wn.2d 799, 809-10, 161 P.3d 967 (2007). Spontaneity, the passage of time, and the declarant's state of mind are factors courts consider to determine

3

whether a declarant has had time to calm down enough to make a calculated statement based on self-interest. See State v. Hardy, 133 Wn.2d 701, 714, 946 P.2d 1175 (1997); State v. Dixon, 37 Wn. App. 867, 873, 684 P.2d 725 (1984).

Here, these factors weigh in favor of the court's decision. It admitted the statements Gomez made to Kasik before the 911 call as excited utterances. It based this decision "on her demeanor, [her] excited state, as well as the information gleaned to assist emergency aid." From Kasik's testimony, the court heard that "Gomez looked scared, was looking around, looked confused, [and] appeared disheveled." Kasik's testimony indicated as the 911 call progressed, Gomez was still upset, but began to calm down. Based on this description of her mental state, the court found that at the beginning of the call, Gomez was in an excited state and under the stress of the event, and as the call proceeded that stress dissipated. For that reason, it admitted the portion of the 911 call up until she was questioned about her injuries. It excluded the 911 call statements after that point and all post-911 call statements.

Learned argues that Gomez's out-of-court statements should have been excluded because her demeanor and mental state were primarily caused by her fear of the police. She told Kasik she was afraid of being arrested because of an outstanding warrant. But, Gomez also told Kasik, "He's coming for me," and Kasik described Gomez's obvious fear based on that, prior to their discussion of calling 911. Further, Gomez remained on the scene, awaiting the arrival of police. It was within the court's discretion to find her mental state was primarily caused by the exciting event, not the fear of police.

4

Learned also argues Gomez's statements were unreliable because she asked to call her "brother" to pick her up, but Kasik later learned the individual was not her brother but a friend. Citing State v. Brown, Learned asserts that due to this misstatement, the court could not be assured that Gomez did not fabricate her statement. 127 Wn.2d 749, 758, 903 P.2d 459 (1995). There, the victim's statement on the 911 tape was held not to be an excited utterance, because she testified that she had an opportunity to, and did in fact, decide to fabricate a portion of her rape story while making the call to 911. Id. at 757-58. Brown is distinguishable. Gomez did not say she fabricated anything. The challenged statement was not about the facts of the crime at all. It is a statement that goes to her overall reliability. Whether Gomez intended to mislead Kasik in order to use the phone, or whether she changed her mind about who Kasik should call, or whether she was still under the influence of the exciting event, the inconsistencies are considerations for the trial court to weigh.

Still, Learned points to another case, Brown v. Spokane County Fire Protection District No. 1, where a statement made to a firefighter 30 to 40 minutes after a car accident did not meet the exception for an excited utterance. 100 Wn.2d 188, 196, 668 P.2d 571 (1983). He argues, at best, Gomez and Learned's interactions ended when Learned left for court, an hour before her statement.[1] So, he asserts that we should apply the same analysis here to hold Gomez's excitement had passed. But, as the State notes, the admissibility of the excited

---

[1] Learned told police he left his trailer around 8:30 a.m. that morning to go to court. The 911 call was placed at 9:34 a.m.

utterance evidence was not the primary question before the court in that case. Brown, 100 Wn.2d at 195-96. The Brown court focused on whether the admission was prejudicial since it was cumulative of other witnesses' testimony. Id. at 196. It did not adopt a rule that a 30 to 40 minute delay in making a statement about an event or condition rendered the statement per se outside the stress of excitement caused by the event or condition. Id. at 195-96. The court below had determined the excited utterance exception did not apply because the witness had the opportunity to calm down and reflect on events. Id. at 196. Additionally, Gomez could still be said to be undergoing stress from fleeing Brown's property and her fear of Brown coming after her. According to police, Gomez exited the trailer about 10 minutes after Learned left to go to court, walking through the woods until she reached the neighborhood where she ran into Kasik.

Here, the trial court found considerable evidence that Gomez was still under the stress of an ongoing event. In light of the broad discretion granted to the trial court in ruling on admissibility of excited utterances, it did not err in admitting Gomez's statements.

## II. Prosecutorial Misconduct

Learned, who did not object at trial, further contends the State committed prosecutorial misconduct in its rebuttal. To demonstrate prosecutorial misconduct, the defendant must prove the prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). When the defendant fails to object at trial, any error is waived unless the prosecutor's conduct

6

was "so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." Id. at 760-61.

Our first inquiry, therefore, is whether the prosecutor's comments were improper. Id. at 756. The contested remarks occurred during the State's rebuttal. The prosecutor said, "One of two things has to be true . . . . Either [Learned] did this or [Learned] is the unluckiest man in this world." He then outlines the implausibility of alternative theories exonerating Learned: that Gomez voluntarily spent two weeks living with him before a stranger went to his trailer and attacked her. "Unluckiest of all," he remarks, "she pins the whole thing on him." He argued,

> [T]hat's not reasonable. No, beyond a reasonable doubt in this case [Gomez]'s substantial bodily injuries, her fearful demeanor and statements, the leaves and the pine needles on her clothing and body, her description of her assault and of her assailant points to one reasonable conclusion, Matthew Learned did it.

Learned argues, "[The government] eroded the burden of proof by suggesting that [it] did not need to prove its case but merely had to discredit Mr. Learned's defense." In context, the prosecutor was juxtaposing the account offered by Learned with the evidence the State presented at trial. He reiterated the State's burden of proof before summarizing the evidence offered to meet that burden. He neither stated nor implied that the defendant had to produce any evidence. Arguing Learned either committed the crimes as supported by the evidence or is very unlucky to have been falsely accused is not equivalent to arguing the jury must believe Learned's account in order to acquit.

Learned relies on State v. Thierry, where the prosecutor incorrectly stated defense counsel had argued a witness should not be believed because of his age.

7

190 Wn. App. 680, 692, 360 P.3d 940 (2015). The prosecutor then suggested if such an argument had merit, "'the State may as well just give up prosecuting'" child sex abuse cases. Id. at 690. We held that the argument was improper in the context presented. Id. at 692.

This case is distinguishable from Thierry. First, unlike defendant Thierry, Learned does not offer specific ways in which the prosecutor's characterization of his defense was untrue. Id. at 692. He merely argues the contested remarks offered an "extreme version" of his defense theory. Second, in Thierry, the prosecutor's remarks were found to be improper in part because they relied "on a threatened impact on other cases or society in general, rather than on the merits of the State's case." Id. at 691. Here, the prosecutor made no statements regarding the societal impacts of an acquittal.

Learned has not demonstrated that the contested remarks constituted prosecutorial misconduct.[2]

III. Newly Discovered Evidence

Finally, Learned asserts the trial court erred by not granting a new trial based on newly discovered evidence.

To prevail on a motion for a new trial based on newly discovered evidence, a defendant must show that the evidence (1) will probably change the result of the

---

[2] Learned also argues the prosecutor impermissibly vouched for the witnesses. "Vouching may occur in two ways: the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony." State v. Coleman, 155 Wn. App. 951, 957, 231 P.3d 212 (2010). Neither referring to Gomez as "brave" for leaving nor calling Kasik a "Good Samaritan" constituted vouching. This argument is without merit.

trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching. State v. Swan, 114 Wn.2d 613, 641-42, 790 P.2d 610 (1990).

Recantation may be newly discovered evidence, but it is inherently suspect. State v. Macon, 128 Wn.2d 784, 799-801, 911 P.2d 1004 (1996). "'Recantation by an important witness of his or her testimony at the trial does not necessarily, or as a matter of law, entitle the defendant to a new trial.'" State v. Wynn, 178 Wash. 287, 288, 34 P.2d 900 (1934). "When a defendant is convicted upon the testimony of a witness who later recants, the trial court must first determine whether the recantation is reliable before considering a defendant's motion for a new trial based upon the recantation." Macon, 128 Wn.2d at 804. A trial court's determination that a recantation of doubtful or insignificant value will not be lightly set aside by an appellate court. Wynn, 178 Wash. at 289.

Learned contends that Gomez's recantations via text messages to his investigator are newly discovered evidence. The first text message was sent by an individual who identified themselves as Gomez. It read in part, "I don't remember [Learned] as my abuser." The court found this to be an equivocal statement. The investigator later received a second text from the same individual. It read in part, "I'm not going to say who I think hurt me and not going to say I know anything but I know it wasn't Matthew who hurt me."

The text messages were unsworn and unauthenticated out-of-court statements. They were offered to prove the truth of the matter asserted. As such,

they were clearly hearsay. ER 801. As hearsay, the text messages would be admissible only for impeachment purposes.[3] ER 801, 806. Evidence that is merely cumulative or impeaching is not enough to prevail on a motion for a new trial. Swan, 114 Wn.2d at 641-42.

Still, he argues had the text messages been available, the trial court would have excluded all of Gomez's statements as unreliable. The trial court considered this argument, ultimately finding the messages "would not change the court's analysis" on the admissibility of the excited utterances.

We conclude Learned has not established that Gomez's text messages constitute newly discovered evidence. The trial court did not err in denying a new trial.

We affirm.

_Appelwick, J._

WE CONCUR:

_____ _____

---

[3] Learned does not argue on appeal that the text messages fall under an exception to the hearsay rule. Learned argues that the text messages were not hearsay under ER 801(d)(1). ER 801(d)(1) is inapplicable, because Gomez did not testify at trial and Learned has not shown evidence that she would testify at a second trial. See ER 801(d)(1)(iii). And, the rule applies to statements of identification. Id. Gomez's texts do not identify an alternate assailant.