# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72514-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| MARCUS ELISHA RUFFIN, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: March 28, 2016 |
| | ) | |

Cox, J. — Marcus Ruffin appeals his judgment and sentence based on convictions of first-degree murder, second-degree assault, and first-degree unlawful possession of a firearm. He claims that WPIC 4.01, which the trial court gave in this case, is an unconstitutional reasonable doubt instruction. He also argues that the prosecutor committed misconduct in various ways, depriving him of a fair trial. He next claims that the court abused its discretion by excluding evidence of his communications with his counsel regarding his alibi defense. Lastly, in his Statement of Additional Grounds for Review, he argues that the forensic analysis of a witness's cell phones was an unconstitutional search. Because there was no reversible error, we affirm.

The State alleged that Marcus Ruffin and Jacob Mommer robbed or attempted to rob two victims, assaulting one and murdering the other during the course of the robbery. The State tried them separately, trying Mommer first. The jury found Mommer guilty.

After Mommer's conviction, detectives interviewed him. He admitted to being with Ruffin and conspiring to rob one of the victims. Mommer also stated that Ruffin admitted to shooting both victims. Mommer entered into an agreement with the State to testify in this case in exchange for the State's recommendation for leniency in sentencing in his case.

Mommer testified at Ruffin's trial. The jury found Ruffin guilty and also determined the special firearm allegations were proven. The court entered its judgment and sentence on the jury verdicts.

Ruffin appeals.

## REASONABLE DOUBT INSTRUCTION

Ruffin argues that the reasonable doubt instruction given in this case, WPIC 4.01, is unconstitutional. Because controlling case authority directs the use of this standard instruction, we reject this argument.

"[J]ury instructions must define reasonable doubt and clearly communicate that the State carries the burden of proof."[1] "Instructions must also properly inform the jury of the applicable law, not mislead the jury, and permit each party to argue its theory of the case."[2]

_____

[1] State v. Bennett, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

[2] Id.

2

We review de novo challenges to jury instructions.[3]

State v. Bennett[4] controls here. In that case, the supreme court "approved WPIC 4.01 and concluded that it adequately permits both the government and the accused to argue their theories of the case."[5] The court also instructed trial courts "to use the WPIC 4.01 instruction to inform the jury of the government's burden to prove every element of the charged crime beyond a reasonable doubt" "until a better instruction is approved."[6]

As a preliminary matter, the State argues that Ruffin cannot raise this issue for the first time on appeal. But an instruction that misstates the reasonable doubt standard is a manifest constitutional error that may be raised for the first time on appeal.[7]

Here, the trial court gave the WPIC 4.01 "reasonable doubt" jury instruction, stating in relevant part, "A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence."

Ruffin challenges the portion of the instruction stated above. He argues that placing "a" before the word "reason" "improperly alters and augments the definition of a reasonable doubt," thus, requiring the jury to articulate "a reason

---

[3] State v. Walker, 182 Wn.2d 463, 481, 341 P.3d 976, cert. denied, 135 S. Ct. 2844 (2015).

[4] 161 Wn.2d 303, 165 P.3d 1241 (2007).

[5] Id. at 317.

[6] Id. at 318.

[7] State v. Kalebaugh, 183 Wn.2d 578, 584-85, 355 P.3d 253 (2015).

that justifies their reasonable doubt." Accordingly, he argues that the instruction "violates the federal and state due process clauses."

Because the trial court provided the instruction as directed by the supreme court, it did not err. Similar arguments were recently made in State v. Lizarraga, where this court upheld WPIC 4.01, citing Bennett.[8] We do the same here for the same reason. These arguments are better directed to the supreme court, which directed trial courts to use WPIC 4.01, as the trial court did in this case.

## PROSECUTORIAL MISCONDUCT

Ruffin argues that the prosecutor committed misconduct, depriving him of his right to a fair trial. We hold that reversal is not warranted for any claimed misconduct.

To prevail on a prosecutorial misconduct claim, "the defendant must establish that the prosecutor's conduct was both improper and prejudicial."[9]

We review alleged prosecutorial misconduct in "the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury."[10]

A defendant waives the misconduct issue by failing to object or request a curative instruction at trial, "unless the conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[11] This

---

[8] 191 Wn. App. 530, 364 P.3d 810, 830 (2015).

[9] State v. Robinson, 189 Wn. App. 877, 892, 359 P.3d 874 (2015).

[10] State v. Emery, 174 Wn.2d 741, 764 n.14, 278 P.3d 653 (2012).

[11] State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014).

heightened standard requires that a defendant "show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[12]

When reviewing alleged misconduct, we focus less on whether the "misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured."[13] We "must consider what would likely have happened if the defendant had timely objected."[14]

*Vouching*

Ruffin claims the prosecutor elicited testimony from Mommer that he agreed to testify "truthfully" in this case, which amounts to vouching by the prosecutor. We disagree.

"It is impermissible for a prosecutor to express a personal opinion as to the credibility of a witness or the guilt of a defendant."[15] "A prosecutor commits misconduct by vouching for a witness's credibility. 'Vouching may occur in two ways: the prosecution may place the prestige of the government behind the

---

[12] Emery, 174 Wn.2d at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

[13] Id. at 762 (citation omitted) (quoting State v. Navone, 186 Wash. 532, 538, 58 P.2d 1208 (1936)).

[14] Id. at 763.

[15] Lindsay, 180 Wn.2d at 437.

witness or may indicate that information not presented to the jury supports the witness's testimony.'"[16]

State v. Ish, on which Ruffin primarily relies, is instructive.[17] There, Nathaniel Ish claimed that "the prosecutor committed misconduct by vouching" for his jail cellmate's credibility by referencing his agreement to testify truthfully.[18] Before Otterson, the cellmate, testified, Ish objected to any question regarding Otterson's agreement to testify truthfully. The trial court allowed the State to establish the agreement terms, including the truthful testimony requirement.

During direct examination in its case in chief, the prosecutor asked Otterson about the type of testimony he agreed to provide, to which he responded "truthful testimony."[19] During re-direct, the prosecutor asked Otterson if his plea agreement included a term for truthful testimony, and he replied yes.[20] Lastly, the prosecutor asked Otterson if he had testified truthfully, and he replied that he had.[21]

---

[16] Robinson, 189 Wn. App. at 892-93 (quoting State v. Coleman, 155 Wn. App. 951, 957, 231 P.3d 212 (2010)).

[17] 170 Wn.2d 189, 241 P.3d 389 (2010) (plurality opinion).

[18] Id. at 195.

[19] Id. at 194.

[20] Id.

[21] Id.

There, the court affirmed Ish's conviction.[22] A majority of the justices agreed that the trial court erred by allowing the "prosecutor to introduce evidence during the State's case in chief that the [plea] agreement required Otterson to testify truthfully."[23] Four of these justices reasoned that "where the credibility of the witness had not previously been attacked, referencing Otterson's out-of-court promise to testify truthfully was irrelevant and had the potential to prejudice the defendant by placing the prestige of the State behind Otterson's testimony."[24] But only these four justices concluded that the trial court's error was harmless.[25]

Four other justices concurred in the result in a separate opinion. They would have decided the case on a different basis, "using the balancing test of Evidence Rule (ER) 403."[26] They concluded that the questioning about the plea agreement was not improper at all, principally on the basis of several decisions of the court of appeals.[27] These justices reasoned:

> However, under ER 403, we should weigh the prejudice engendered by the "testify truthfully" language in a plea agreement against the State's legitimate purposes for questioning a witness about a plea agreement. **When the State offers a witness who has agreed to testify as part of a plea agreement, the existence of a "deal" is an obvious ground for impeachment. It shows**

---

[22] Id. at 201.

[23] Id. at 190-191 (plurality opinion); accord id. at 206 (Sanders, J., dissenting).

[24] Id. at 199.

[25] Id. at 201.

[26] Id. at 202.

[27] Id.

7

***potential bias and motivation to lie.*** There is even the possible inference that the State offered the witness the plea agreement to procure *fraudulent* testimony implicating the defendant. In the face of obvious (and damning) lines of questioning on cross-examination, the prosecutor in this case wished to present Otterson's testimony in its true context—as part of a plea deal in exchange for truthful testimony. ***By questioning Otterson on direct examination about this issue, the prosecutor intended to "pull the sting" from the anticipated cross examination.***[28]

Significantly, despite the difference in views over the admissibility of the evidence, both the lead and concurring opinions agreed on an important point—that there are some circumstances when the State may preemptively "pull the sting" from an anticipated attack on the credibility of a witness during the State's case in chief.[29]

Here, the prosecutor examined Mommer on direct during the State's case in chief. The prosecutor asked a series of questions to lay the foundation for admission of two exhibits. One exhibit was Mommer's signed agreement with the State for leniency in sentencing in his case. The other was a transcript of a recording of the circumstances surrounding Mommer's signing the agreement. The exchange between the prosecutor and Mommer during the State's case in chief follows:

> [State:] Was part of the agreement that you agreed to come and testify at trial?
>
> [Mommer:] Yeah, truthfully.[30]

---

[28] Id. (some emphasis added).

[29] Id. at 199 n.10, 203-04 (citing State v. Bourgeois, 133 Wn.2d 389, 402–03, 945 P.2d 1120 (1997)).

[30] Report of Proceedings (June 23, 2014) at 187.

There was no motion to strike the answer or request for a curative instruction. In our view, if the court had been asked to give a proper curative instruction, it would have cured a problem by directing the jury to disregard the part of the answer that refers to "truthfully."

More importantly, unlike in Ish, the prosecutor did not ask Mommer whether he was required to testify truthfully. Rather, Mommer volunteered that information in response to another question: whether he agreed to testify at trial. Additionally, Ruffin did not object to this questioning, whereas the defense in Ish objected to the any questions regarding the cell mate's agreement to testify truthfully. Thus, Ish is distinguishable.

On this record, this momentary exchange between the prosecutor and Mommer was not misconduct. And there simply is no showing that it had a substantial likelihood of affecting the jury verdict.

*Accomplice Liability*

Ruffin also argues that the State committed misconduct by asking Mommer whether he had been convicted as an accomplice. Ruffin claims this was based on "unsubstantiated speculation," invaded the province of the jury, and vouched for Mommer. Although the question was improper, it did not have a substantial likelihood of affecting the jury verdict.

At trial, the State asked Mommer about the prior criminal case in which he had been convicted of murder. This exchange between the prosecutor and Mommer followed:

> [State:] And were you convicted of being an accomplice to murder in the first degree and assault in the second degree?

9

[Mommer:] Yes.

[State:] Do you know what an accomplice is?

[Mommer:] Yes.

[State:] What is it?

[Defense counsel:] Objection.

[Mommer:] Somebody that aids somebody.

[Defense counsel:] I have an objection.

[Court:] Basis?

[Defense counsel:] Legal conclusion. It is not relevant.

[Court:] Objection is overruled. You may answer.

[Mommer:] I was convicted of it as being an accomplice, somebody that aids somebody in a crime.[31]

Ruffin argues this was misconduct because it was "not possible to determine whether Mommer's jury convicted him as an accomplice or principal." Neither verdict found Mommer specifically guilty as an accomplice or principal.

We note that there was no objection to the initial question and that the objection, when made, was based on the assertion that the witness was being asked to give a legal conclusion. The claim on appeal is made on different bases: invading the province of the jury and vouching.

Nevertheless, the issue is whether that question was improper. We hold that it was. Mommer presumably knew of the State's theory of the case in the prior trial. But there was no way for him to know the basis on which he was

---

[31] Id. at 121.

convicted by the jury. He was not on that jury, and there is nothing in that jury's verdict that would tell outsiders whether he was convicted as an accomplice. The question was improper.

But the real issue before us is whether this improper question had a substantial likelihood of affecting the jury verdict. We think not.

During closing, the prosecutor did not argue that Mommer was convicted as an accomplice. The argument was limited to describing his "participat[ion] in a robbery that resulted in the death of [one victim] and the injuries to [the other victim]."[32] And we are unpersuaded that the brief exchange during examination had a substantial likelihood of affecting the jury verdict, particularly in light of the other evidence before the jury.

## RIGHT TO PRESENT A DEFENSE

Ruffin finally argues that the trial court deprived him of his right to present a defense. Specifically, he argues that the court erroneously excluded evidence of what he told his counsel about his alibi defense. We hold that the trial court properly excluded this evidence.

Criminal defendants have a constitutional right to present a defense under the Sixth Amendment of the United States Constitution and article I, section 22 of Washington's constitution.[33] But this right is not absolute, and the evidence "a

---

[32] Report of Proceedings (July 7, 2014) at 20.

[33] State v. Wade, 186 Wn. App. 749, 763, 346 P.3d 838, review denied, 184 Wn.2d 1004 (2015).

defendant seeks to introduce 'must be of at least minimal relevance.'"[34] "'The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'"[35]

"'All relevant evidence is admissible' unless it is limited by the constitution, the rules of evidence, or other applicable rules."[36] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[37] But "[r]elevant testimony may be excluded from trial if it is hearsay."[38]

Under ER 801(d)(1)(ii), prior consistent statements are not hearsay. The rule specifically provides that the statement is not hearsay if the declarant testifies at the trial and is subject to cross examination concerning the statement. Additionally, the statement must be "consistent with the declarant's testimony and . . . offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."[39] "Recent fabrication is

---

[34] State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)).

[35] Lizarraga, 191 Wn. App. at 553 (alteration in original) (quoting Taylor v. Illinois, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)).

[36] State v. Garcia, 179 Wn.2d 828, 844, 318 P.3d 266 (2014) (quoting ER 402).

[37] ER 401.

[38] Garcia, 179 Wn.2d at 845.

[39] ER 801(d)(1)(ii).

inferred when counsel's examination 'raise[s] an inference sufficient to allow counsel to argue the witness had a reason to fabricate her story later.'"[40]

As a threshold matter, the trial court must decide "'whether the [declarant's] proffered motive to lie rises to the level necessary to exclude the prior consistent statement.'"[41] Specifically, a charge of recent fabrication can be rebutted by prior consistent statements only if those statements were made when "'the witness was unlikely to have foreseen the legal consequences of his or her statements.'"[42]

"[R]elevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'"[43]

This court reviews de novo alleged denials of the right to present a defense.[44]

---

[40] State v. Makela, 66 Wn. App. 164, 168, 831 P.2d 1109 (1992) (alteration in original) (quoting State v. Bargas, 52 Wn. App. 700, 702-03, 763 P.2d 470 (1988)).

[41] State v. McWilliams, 177 Wn. App. 139, 149, 311 P.3d 584 (2013) (quoting Makela, 66 Wn. App. at 173).

[42] Id. (quoting Makela, 66 Wn. App. at 169).

[43] State v. Beadle, 173 Wn.2d 97, 120, 265 P.3d 863 (2011) (quoting ER 403).

[44] Jones, 168 Wn.2d at 719.

At trial, Ruffin's girlfriend, Monica King, testified to Ruffin's alibi—his claim that he was with her at the time of the shooting. When asked why she did not earlier tell anyone about Ruffin's alibi, she stated that Ruffin did not initially want her to get involved.

Ruffin also testified. Among the matters covered was his claimed change of mind about asking King to testify not long before trial. On re-direct, Ruffin's attorney asked Ruffin about their first meeting to discuss the charges. Counsel asked "Did I mention alibi as a defense that was available to you?"[45] The State objected, arguing it called for hearsay. Counsel argued that ER 801(d)(1)(ii) applied.

Outside the jury's presence, the court permitted counsel to argue further their respective positions. The court sustained the objection at the conclusion of the respective arguments.

The court did so on several bases. The court first stated that it had in mind Ruffin's right to present evidence in his defense, particularly in a murder trial. The court then focused on whether Ruffin's statement to his counsel would be classified as a non hearsay statement under ER 801(d)(1)(ii): a prior consistent statement. The court concluded that Ruffin's statements to his counsel about legal strategy (in this case, alibi) did "not have the hallmark of reliability" that underlies the analysis.

Additionally, the court considered ER 403, finding the need for this particular testimony "to be minimal in light of Ms. King's testimony that previously

---

[45] Report of Proceedings (July 2, 2014) at 132.

14

Mr. Ruffin had told her and communicated to her that he did not want her . . . to get involved . . . ."

The court also expressed "[a]dditional 403 concerns," including "confusion of the issues and waste of time," stating:

> This, if continued, would in all likelihood require substitution of counsel, would require Mr. Peale to testify. . . . The question of attorney's credibility [and] the escape of the waiver of the attorney-client privilege, are all matters that further make this Court conclude that the objection ought be sustained.[46]

For all these reasons, the court's ruling excluding the offered evidence was proper.

Here, the court considered Ruffin's constitutional right to present a defense. But this constitutional right does not, in this case, override the evidentiary issues on which the court based its rulings.

Ruffin argues that the trial court can consider whether the witness made the prior consistent statement when he or she had no motive to lie. He argues that consideration of this factor weighs in his favor because he was speaking confidentially to his defense attorney.

But even if we were to agree that Ruffin had no motive to lie when speaking with his counsel about his alibi, that would not necessitate admission of the statement. Even admissible evidence may be excluded for other reasons.

For example, the court also based its decision on ER 403. That rule permits the exclusion of otherwise admissible evidence for specified reasons. Here, the court properly concluded that confusion of the issues and waste of time

---

[46] Id. at 155.

substantially outweighed the admissibility of the evidence. Given the circumstances cited by the court, its weighing of competing factors was correct.

Ruffin relies on ER 403, arguing that evidence of his alibi discussion with his attorney was relevant to his defense and to rebut the state's allegation of recent fabrication. He further argues that the State did not establish that admitting the evidence was prejudicial.

These arguments do not detract from the trial court's correct weighing of relevant factors that prompted it to exclude the offered evidence. There was no error.

## STATEMENT OF ADDITIONAL GROUNDS

Pursuant to RAP 10.10, Ruffin raises an additional ground for review, arguing that the forensic analysis of Mommer's cell phones was an unconstitutional search.[47] We decline to review this issue because the record is inadequate to do so.

Where "allegations rest on matters that are outside the record, they cannot be considered on direct appeal."[48] "The appropriate means of raising matters outside our record is through the filing of a personal restraint petition."[49]

Here, the record shows only that a warrant was served to obtain Mommer's phone records and a warrant was served to search Mommer's

---

[47] Statement of Additional Grounds at 3.

[48] State v. Kinzle, 181 Wn. App. 774, 786, 326 P.3d 870, review denied, 181 Wn.2d 1019 (2014).

[49] State v. Hart, 188 Wn. App. 453, 466, 353 P.3d 253 (2015).

residence. But the warrants are not part of the record. Thus, the record is silent on the scope of these warrants. Based on this information, we cannot determine the constitutionality of the forensic analysis conducted on the phones. Accordingly, we will not review this issue.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Trickey, J_                    _Spearman, C.J._