[No. 31477-7-I.   Division One.   July 31, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID J. AVILA, *Appellant*.

*Nielsen & Acosta*, for appellant.

*K. Garl Long*, for respondent.

AGID, J. — A jury convicted David J. Avila of first-degree child molestation. He appeals, arguing that the trial court erred in ruling that the victim, NT, who was five years old at the time of trial, was competent to testify and in allowing her to testify at trial without first administering an oath. We conclude that the trial court did not abuse its discretion in finding NT competent and that its failure to administer an oath was neither preserved for review nor prejudicial error and affirm.

## FACTS

In 1991, NT was four years old. She and her mother, TT, lived in an apartment complex in Burlington. One of their neighbors, Pam Richards, cared for NT while TT was at work. Avila was Richards's fiance and occasionally stayed overnight at her apartment. He was at her apartment daily between December 18, 1991, and January 3, 1992.

On January 8, 1992, NT told her mother that sometime in late December 1991, while she was at Richards's apartment, Richards went to the store and left her and Arron, Richards's son, alone with Avila. NT told TT that Avila had placed his hands inside her panties and played with her "thingee". NT made a number of similar statements

to TT and to Jean Willard,[1] who started caring for NT after the incident at Richards's apartment.

Before trial began, the court held a hearing to determine whether NT was competent to testify and whether NT's statements to TT and Willard were admissible child hearsay. In response to the prosecutor's questions, NT stated that she was five years old, described the color of her skirt and the shapes on her jacket and identified an animal on the prosecutor's tie as a tiger. NT counted from 1 to 17 before she was interrupted. The prosecutor asked her to identify an object in front of her. She replied that it was her doll and she identified "the pink one over [t]here" as "little piggy".

The prosecutor asked NT if she remembered who the judge was. NT pointed to the court. The prosecutor then asked her whether "he is the one that needs to hear what you say and what happened to you". NT nodded affirmatively. The prosecutor then asked: "Is it important to tell the judge the truth about things?" She gave an inaudible response. The prosecutor repeated the question. This time NT nodded affirmatively and said "Mommy".

The prosecutor then asked NT a series of questions about her trip to Disneyland with her aunt and uncle in April 1992, three months before the hearing. NT stated that she went there with Tony, her uncle, that she had fun and played on the rides. She explained that her mother didn't go with her because she was working. The prosecutor asked NT about her babysitters. NT stated that, at the time of the hearing, she went to "Grandma Jean's". The prosecutor asked if anyone else ever babysat for her. She replied "Pam" (Richards). When asked if she liked going to Richards's, NT responded negatively. The prosecutor asked "how come" and NT stated: "This is so hard for me" and "I don't want to do this". The prosecutor's final question on this subject was whether she went

---

[1]Willard's name is spelled as "Gean", "Gene", and "Jean" in different parts of the record and in the parties' briefs. We refer to her as "Jean Willard" in this opinion.

to Richards's "a lot of days or one day". NT responded that she went there on "lots of days". The defense did not ask NT any questions.

The trial court found NT competent, stating that it did not "have any question but she understood the obligation to speak the truth on the witness stand" and that the elements set forth in the *Allen* case were met.[2] NT testified at trial without first taking an oath to tell the truth. She had to be called to the stand twice because she was too upset to testify at first. When she was recalled, NT testified that Avila "touched [her] private part".

## DISCUSSION

■■■ *State v. Allen*, 70 Wn.2d. 690, 424 P.2d 1021 (1967), sets forth the test for determining the competency of a child witness. The child witness must demonstrate:

> (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

70 Wn.2d at 692. *See also* CrR 6.12(c)(2). The responsibility for determining a witness' competency rests with the trial court, who "saw the witness, noticed her manner and considered her capacity and intelligence". *State v. Johnson*, 28 Wn. App. 459, 461, 624 P.2d 213 (1981), *aff'd*, 96 Wn.2d 926 (1982). We review the trial court's ruling only for an abuse of discretion. 28 Wn. App. at 460.

Although the trial court stated in its oral ruling that the *Allen* test was met, it neither discussed the individual factors nor made any specific findings. In order to facilitate appellate review, the better practice is for the trial court to state its analysis of the *Allen* factors on the record. Here, the record is sufficient for us to conduct an in-

---

[2]*See State v. Allen*, 70 Wn.2d. 690, 424 P.2d 1021 (1967).

dependent review, and we will therefore address each factor individually.

At the competency hearing, NT responded affirmatively when the prosecutor asked her if it is important to tell the judge the truth about things. This is sufficient to meet the first factor, an understanding of the obligation to speak the truth on the witness stand. NT also demonstrated that she had the mental capacity at the time of the incident to receive an accurate mental impression of it. NT was four years old at the time of the incident. Although she found it hard to talk about the incident, she was able to recollect details of a trip to Disneyland which she took several months before the hearing. The trial court also observed that she was a bright child. *See State v. Sardinia*, 42 Wn. App. 533, 713 P.2d 122 (child's overall demeanor and manner are sufficient to permit trial court to infer that the second factor is met), *review denied*, 105 Wn.2d 1013 (1986). NT's recollections of the trip to Disneyland and of her babysitters satisfy the third factor, a memory sufficient to retain an independent recollection of the occurrence. Finally, NT's answers to the prosecutor's questions at the competency hearing demonstrated that she had the capacity to express her memories of past events and to understand questions about them, thus satisfying the fourth and fifth *Allen* factors.

NT's reluctance to testify about the abuse both at the competency hearing and at trial does not defeat the trial court's competency determination. *See State v. Carlson*, 61 Wn. App. 865, 875, 812 P.2d 536 (1991), *review denied*, 120 Wn.2d 1022 (1993). Nor does her failure to answer any questions or testify about the incident at the competency hearing undermine that finding. A court is not required to "examine a child witness regarding the particular issues and facts of the case to determine competency". *State v. Przybylski*, 48 Wn. App. 661, 665, 739 P.2d 1203 (1987). In *Przybylski*, we held that as long as the witness demonstrates the ability to "accurately relate events which occurred at least contemporaneously

with the incidents at issue, the court may infer that the witness is likewise competent to testify regarding those incidents as well". 48 Wn. App. at 665. NT was able to testify about events contemporaneous with the incident, and the trial court properly concluded that she would be competent to testify about the incident as well.

In addition, NT's actual trial testimony demonstrates that she was a competent witness. Although a trial court determines competence pretrial, on appeal we will examine the entire record to review that determination. *Cf. State v. Guerin*, 63 Wn. App. 117, 123, 816 P.2d 1249 (1991) (upholding trial court's determination that a child witness was competent at the time of trial "because her previous testimony on direct examination established her independent recollection" although she could not remember details on cross-examination), *review denied sub nom. State v. Perkins*, 118 Wn.2d 1015 (1992). This approach is consistent with the great deference we give to a trial court's competency determination because of its unique opportunity to observe the witness' demeanor.

Avila next contends that the trial court committed reversible error by allowing NT to testify at trial without first administering an oath to tell the truth. We agree that the trial court's failure to administer an oath was error. ER 603 requires that every witness be sworn before testifying.[3] Where the witness is a child, a trial court does not abuse its discretion in declining to administer a formal oath. *See State v. Collier*, 23 Wn.2d 678, 694, 162 P.2d 267 (1945) (court did not abuse its discretion in deviating from statutory form of oath and asking eight-year-old witness whether he "promised" to tell the truth); *See also State v. Dixon*, 37 Wn. App. 867, 876, 684 P.2d 725 (1984); *Johnson*, 28 Wn. App. at 461. Although a trial court may dispense

---

[3]ER 603 provides:

"Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so".

with *formal* oaths when dealing with child witnesses, the cases cited above do not suggest that the court can dispose of an oath to tell the truth entirely. ER 603 clearly requires that the trial court administer some type of oath to tell the truth or elicit an assurance that the witness will tell the truth before allowing the witness to testify.

██ Although the trial court's failure to administer an oath was error, Avila has waived it because he did not object to NT's testimony on this basis at trial. *See Dixon*, 37 Wn. App. at 876 (failure to object at trial to admission of testimony of child witness who has not been administered a formal oath constitutes a waiver). Notwithstanding his failure to object below to NT's testimony, Avila contends that the error is one of constitutional magnitude that may be raised for the first time on appeal. *See* RAP 2.5(a)(3). Although the requirement under ER 603 that every witness be sworn before testifying is derived in part from Const. art. I, § 6,[4] a rule's constitutional underpinnings do not necessarily convert a violation of the rule into an error of constitutional magnitude. *See State v. Lynn*, 67 Wn. App. 339, 835 P.2d 251 (1992). In *Lynn*, this court adopted a four-step approach for determining whether an alleged constitutional error may be raised for the first time on appeal. Avila has neither cited *Lynn* nor provided an analysis of the factors listed there. We therefore reject his argument that this issue is properly raised for the first time on appeal.

Even if it were properly raised or preserved, the error did not prejudice Avila and cannot constitute grounds for reversal. In addition to NT's testimony, the State presented TT's and Willard's testimony about NT's statements to them. It also presented the testimony of Diana Bower, a child abuse specialist who counseled NT after the incident. Bower testified to NT's behavior during their

---

[4]Article I, section 6 provides:

"The mode of administering an oath, or affirmation, shall be such as may be most consistent with and binding upon the conscience of the person to whom such oath, or affirmation, may be administered".

sessions which, in her opinion, was consistent with abuse. Arron Richards, Pam Richards' son, who was at the apartment the night of the incident, testified that he was in the living room with Avila and NT, but went to his own room because Avila was watching an R-rated movie and he did not want to watch. He stated that when he left, NT was sitting on Avila's lap and he had his hand on her thigh. He further testified that when he was in his room, he could hear Avila laughing and NT screaming and laughing a little bit. We are confident that, in light of this evidence and NT's statement at the pretrial hearing that she understood that it was important to tell the judge the truth, the admission of NT's unsworn trial testimony did not affect the outcome of the trial. *See State v. Jamison*, 93 Wn.2d 794, 800, 613 P.2d 776 (1980) (error is prejudicial if it affects or presumptively effects the final results of a trial) (citing *State v. Martin*, 73 Wn.2d 616, 627, 440 P.2d 429 (1968), *cert. denied*, 393 U.S. 1081 (1969))

The judgment is affirmed.

COLEMAN and GROSSE, JJ., concur.