# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>S.D.,<br><br>Appellant. | No. 46320-2-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — S.D.[1] appeals his adjudication of guilt on two counts of first degree child molestation.  He argues that the juvenile court erred in finding that one of the two victims, six-year-old S.C., was competent to testify.  Because substantial evidence supports the juvenile court's findings that S.D. challenges, the juvenile court did not abuse its discretion when it found S.C. competent to testify.  Thus, we affirm.

## FACTS

### I. BACKGROUND

Angelique C. and Kassie D. and their families were close friends.  S.C. and A.C. are Angelique's daughters; S.D. is Kassie's son.

---

[1] We use initials for the parents' last names and the juvenile children involved in this incident to protect their privacy.  Pursuant to General Order 2011-1, the name of the minor[s] will be indicated with initials.  Gen. Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.), http://www.courts.wa.gov/appellate_trial_courts/.

From January through May 2013, Kassie cared for S.C.,[2] A.C.,[3] and the girls' younger brother at her (Kassie's) house before and after school. On July 4, S.C. told Angelique that S.D.[4] had touched her and A.C.'s "privates." 2 Verbatim Report of Proceedings at 43 (VRP).

That evening and the following morning, Angelique questioned each girl separately about this disclosure. When she asked S.C. where S.D. had touched her, S.C. pointed to her genitalia and told her mother that S.D. had touched and moved his finger around her "privates"; showed her his "privates"; and asked her to put her mouth on his "privates," but she refused. 2 VRP at 46–47. S.C. was not specific about how many times this had happened, but she also told her mother that it had happened in S.D.'s bedroom and that S.D. had also touched A.C.

Similarly, A.C. told Angelique that S.D. had touched her "privates"; shown her his "privates"; and asked her to put her mouth on his "privates," but she refused. 2 VRP at 48. A.C. also told her mother that this had happened in S.D.'s bedroom and a tent and that it had happened more than one time.

Angelique reported the allegations to the police and took the girls to medical exams and forensic interviews. Keri Jean Arnold, the child interview specialist for the Pierce County Prosecutor's Office, interviewed the girls several days later. Arnold recorded the interviews.[5]

---

[2] S.C. was five at the time.

[3] A.C. was seven at the time.

[4] S.D. was 14 at the time.

[5] Although the juvenile court heard these two recordings at trial, they are not part of the record on appeal. Accordingly, we rely on the juvenile court's findings of fact I–V when describing these interviews.

During her interview, S.C., described being in S.D.'s bedroom, stated that S.D. had "put his finger in her 'private spot,'" and pointed to her vaginal area to show where her "private spot" was located. Clerks Paper's (CP) at 69. She also stated that S.D. had shown her his penis and asked her to put her mouth on it, but she refused. A.C. described similar events but provided greater detail.

During her medical exam, S.C. told Michele Breland, the nurse practitioner conducting the exam, that S.D.'s finger "went in [her] private spot." 3 VRP at 197. A.C. told Breland that S.D. had done "'something'" to her "'private spot.'" 3 VRP at 190.

## II. PROCEDURE

The State charged S.D. in juvenile court with one count of first degree child molestation involving A.C. and one count of first degree child molestation involving S.C. S.D. moved to exclude S.C.'s testimony and her related hearsay statements on the ground that she was incompetent to testify. Because this was a bench trial, the juvenile court considered these motions throughout the course of the trial.

During S.C.'s testimony, S.C. was able to recall several facts that were contemporaneous to the sexual conduct.[6] But as to the sexual conduct itself, S.C. testified that she had either forgotten or "[could not] remember anything" specific about the incidents. 1 VRP at 89–90. She

---

[6] Specifically, she was able to recall (1) she had gone to Chuck-E-Cheese's for her birthday, but she was unsure of what she had done there, (2) all of her family members and S.D.'s family members, (3) all of her siblings' ages, (4) a dog her family had owned that had passed away around the time of the incident, (5) her current teacher, (6) the fact she attended a different school for kindergarten, although she could not recall the teacher's name, (7) the fact she and her sister were always required to complete their homework immediately upon arriving at S.D.'s house after school, and (8) the fact S.D.'s bedroom was green.

was also unsure about why she was not allowed to see S.D.'s family anymore. In addition, although she testified that she had told her mother about some of the things S.D. had done to her and about S.D. also doing these things to A.C, S.C. testified that she did not remember whether she had told her mother about everything that had happened. She did, however, testify, that what S.D. had done was wrong and that he had asked her to touch his body, although she was not sure what part. S.C. did not appear to remember talking to Arnold, and she could not remember what she had told Breland. Counsel also questioned S.C. extensively about the concept of the truth versus a lie.[7]

Based on the trial testimony and the applicable statute and case law, the juvenile court found that S.C. was competent to testify and denied the motion to exclude S.C.'s testimony and hearsay statements. In its written findings of fact and conclusions of law on the competency issue, the court addressed each of the five *Allen*[8] factors.[9]

Ultimately, the juvenile court adjudicated S.D. guilty of two counts of first degree child molestation. S.D. appeals.

---

[7] We set out this testimony in more detail below.

[8] *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967).

[9] We describe the relevant findings in more detail below.

ANALYSIS

S.D. argues that the juvenile court erred in entering findings of fact I–V and erred in ruling that those findings support its conclusion of law that S.C. was competent to testify.[10] Specifically, he argues that the court erred when it found that S.C. had satisfied the five *Allen* factors.[11] His arguments focus on three things: (1) S.C.'s testimony that she did not understand the difference between the truth and a lie, (2) S.C.'s inability to "remember anything" about the alleged incidents, Br. of Appellant at 13 (quoting 1 VRP at 86–90), and (3) S.C.'s inability to testify about the details of the crime. We disagree.

## I. Legal Standards

Washington courts presume that all witnesses are competent until proved otherwise by a preponderance of the evidence. *State v. Brousseau*, 172 Wn.2d 331, 341, 259 P.3d 209 (2011). The "party challenging the competency of a child witness has the burden of rebutting [the] presumption [of competency] with evidence indicating that the child is of unsound mind, intoxicated at the time of his production for examination, incapable of receiving just impressions

---

[10] S.D. also argues that he was prejudiced by this error because S.C.'s out-of-court statements to Arnold would not have been admissible under *Crawford v. Wash.*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), if the juvenile court had not allowed S.C. to testify. Because we hold that the juvenile court did not err in finding S.C. competent to testify, we need not reach S.D.'s prejudice argument. But even if we were to reach the prejudice argument, *Crawford* would not apply because we hold that the trial court properly allowed S.C. to testify. *See State v. Hopkins*, 134 Wn. App. 780, 790, 142 P.3d 1104 (2006) (third prerequisite for *Crawford* to apply is that the defendant must not have had an opportunity to cross-examine the declarant).

[11] S.D. assigns error to the juvenile court's findings of fact I, II, III, IV, and V on the competency issue, which were the juvenile court's findings on each of the five *Allen* factors.

of the facts, or incapable of relating facts truly." *State v. S.J.W.*, 170 Wn.2d 92, 102, 239 P.3d 568 (2010).

"The *Allen* factors continue to be a guide when competency is challenged." *S.J.W.*, 170 Wn.2d at 102. The five *Allen* factors the court considers examine whether the witness: (1) is capable of understanding the obligation to tell the truth, (2) has the mental capacity at the time of the incident and the ability to receive an accurate impression of the incident, (3) has sufficient memory to retain an independent recollection of the incident, (4) has the capacity to express in words her memory of the incident, and (5) has the capacity to understand simple questions about the incident. *Allen*, 70 Wn.2d at 692.

We review the juvenile court's child competency determination for manifest abuse of discretion. *State v. Leavitt*, 111 Wn.2d 66, 70, 758 P.2d 982 (1988) (citing *Allen*, 70 Wn.2d 692). We accord significant deference to the juvenile court's conclusions as to the competency of a witness to testify. *Brousseau,* 172 Wn.2d at 340. We examine the entire record including the child's trial testimony. *Brousseau*, 172 Wn.2d at 341, n. 5; *State v. Woods*, 154 Wn.2d 613, 617, 114 P.3d 1174 (2005) (citing *State v. Avila*, 78 Wn. App. 731, 737, 899 P.2d 11 (1995). The court abuses its discretion when the evidence does not support the court's findings of fact or the court's decision is contrary to law. *State v. Williamson*, 100 Wn. App. 248, 257, 996 P.2d 1097 (2000).

## II. CHALLENGED *ALLEN* FACTORS

### A. FIRST *ALLEN* FACTOR

The juvenile court made the following finding on the first *Allen* factor–the capacity to understand the obligation to tell the truth:

> S.C. understands her obligation to speak the truth on the witness stand[.] During her testimony, she mentioned several times the importance of telling the truth, including that it was the most important thing, that she would be in trouble if she did not tell the truth, that the judge would be angry if she did not tell the truth, that she got punished at home if she did not tell the truth, and that she did tell the truth during her testimony.

CP at 51. S.D. argues that the juvenile court erred in finding that S.C. understood her obligation to speak the truth because she twice testified she did not know the difference between the truth and a lie.

Although S.D. is correct that S.C. testified that she did not understand the difference between the truth and a lie, the record also shows that S.C. did, in fact, understand these concepts, but was just unable to articulate the difference. First, during the State's direct examination of S.C., the State specifically questioned S.C. about her obligation to tell the truth while testifying:

Q [Prosecutor]. What's the most important thing for you to do today?
A [S.C.]. Tell the truth.
Q. What is it?
A. Tell the truth.
Q. No matter what?
A. Yes.
Q. When you are at home, do your Mom and Daddy want you to tell the truth?
A. Yes.
Q. What happens if you don't?
A. I get in trouble.
Q. What kind of trouble?
A. Spanking or corner.
Q. Spanking or corner?
A. Yeah.
Q. You have to stand in the corner?
A. Yes.
Q. Is the same thing true for [your sister]? Does she have the same rules that you do?
A. I don't know if she has three rules or two rules.

Q.      Okay.  Is telling the truth one of her rules, too?
A.      Yes.
Q.      Is that an important rule at your house?
A.      Yes.
Q.      Do you think it's an important rule today?
A.      Yes.
Q.      The Judge up there in the robe, [S.C.], how do you think she will feel if you don't tell the truth?
A.      Mad.
Q.      Do you think she will be mad?
A.      Yeah.
Q.      Do you think it's important that you tell her the truth about everything?
A.      Yeah.
Q.      Will you promise to do that?
A.      Yeah.

2 VRP at 79–80.

The State later recalled S.C. and questioned her about the difference between the truth and

a lie:

[Prosecutor]:  Hi, [S.C.].  You know what, there's a couple questions I forgot to ask you.  I'm really sorry I made you come back in here.  Can I ask a couple more quick questions?
[S.C.]: Yeah.

. . . .

Q [Prosecutor].  Do you remember how we talked about your mom and dad telling you it's important to tell the truth?
A [S.C.].  Yeah.
Q.      *Do you know the difference between a truth and a lie*?
A.      *No*.
Q.      No?
A.      No.
Q.      Are you sure?
A.      Yeah.
Q.      Let me ask you this:  If you're telling somebody the truth, are you telling them something that really happened or something that's pretend?

8

> A. Really true.
>
> Q. If you're telling them something that's pretend, is that something that really happened or didn't happen?
>
> A. Didn't happen.
>
> Q. Did not happen?
>
> A. Yeah.
>
> Q. Do you know your colors, [S.C.]?
>
> A. Yes.
>
> Q. What color is Ms. Trina's shirt?
>
> A. Blue and red.
>
> Q. Huh?
>
> A. The one inside is blue, the one outside is red.
>
> Q. What color is your sweatshirt?
>
> A. Pink.
>
> Q. So if I tell you that you're wearing a green sweatshirt, am I telling you the truth or am I telling you a lie?
>
> A. Lie.
>
> Q. If I tell you that you're wearing a pink sweatshirt, am I telling you the truth or am I telling you a lie?
>
> A. Truth.

2 VRP at 117–18 (emphasis added). On cross examination, defense counsel asked S.C. if she knew "the difference between a truth or a lie." 2 VRP at 119. S.C. again responded, "No." 2 VRP at 119.

Although S.C. could not verbalize the difference between the truth and a lie, "[a] child's inability to express an understanding of the meaning of truth does not affect [her] competency as long as [s]he possesses a sufficient understanding of truth to insure [her] testimony is not the result of fabrication or imagination." *State v. Sims*, 4 Wn. App. 188, 190, 480 P.2d 228 (1971). Here, S.C. demonstrated that she possessed a sufficient understanding of the truth and a lie. She was able to identify a lie and the truth when the State questioned her about the color of her sweatshirt, and she testified that the truth was something that was real and not pretend. Additionally, S.C.

clearly articulated that she understood she was obligated to tell the truth in the court proceeding.

Thus, substantial evidence supports the juvenile court's finding that S.C. met the first *Allen* factor.

## B. SECOND AND THIRD *ALLEN* FACTORS

The juvenile court made the following findings on the second *Allen* factor—that she has

the mental capacity at the time of the incident and the ability to receive an accurate impression of

the incident:

> 2. S.C. had the mental capacity at the time of the incident to receive an accurate impression of it. S.C. testified about things that occurred before and during the charging period. She provided details about those things, and she was able to testify about things that happened at the respondent's house on different occasions, and many of those details were confirmed by her mother and by her sister (A.-M C). Although S.C. appeared reluctant to discuss specific details in court, there is no evidence that suggests she lacked the capacity to receive an accurate impression of the incidents that occurred with the respondent.

CP at 51.

The juvenile court also made the following findings on the third *Allen* factor—sufficient

memory to retain an independent recollection of the occurrence:

> 3. S.C. has sufficient memory to retain an independent recollection of the incident[.] She was also able to testify about things that occurred before the charging period, and many of those details were confirmed by her mother. This factor does not require S.C. to actually testify about the details of the incidents with the respondent[.] Rather, it requires S.C. demonstrate a sufficient capability of remembering things that occurred during that time period, and she has done that during her testimony in this case.

CP at 52.

S.D. argues that because S.C. "could not 'remember anything'" about the alleged incidents,

the juvenile court's findings on the second and third factors were erroneous. Br. of Appellant at

13 (quoting 1 VRP at 86–90). S.D. also argues that S.C.'s lack of current memory is dispositive. Again, we disagree.

As the juvenile court acknowledged, S.C. was not required to testify about the specific incident, which is the core of S.D.'s argument, but, rather, she was required to have the mental capacity at the time to receive an accurate impression (the second *Allen* factor) and an ability to relate contemporaneous events (the third *Allen* factor). The ability to relate contemporaneous events is sufficient to support an inference that the witness is also competent to testify about the charged incident. *State v. Przybylski*, 48 Wn. App. 661, 665, 739 P.2d 1203 (1987); *see also Woods*, 154 Wn.2d at 620; *Avila*, 78 Wn. App. at 736–37.

The juvenile court found that S.C. had both the mental capacity at the time to receive an accurate impression and the capacity to remember *contemporaneous* facts. The record shows that at trial S.C. testified about a number of events that were contemporaneous with the crimes. For instance, she testified about the pet she owned at this time. She described the fact that she and her sister would go to S.D.'s house after school and do their homework first thing. She named S.D.'s parents and siblings and testified that she and her sister played with S.D.'s siblings. She testified that she, her sister, and S.D. played in S.D.'s bedroom and said that the walls were green. She testified to what grade she was in at the time. And S.C.'s testimony was largely corroborated by other witnesses including her mother.

S.D. argues that S.C. could not remember anything about the alleged incidents. But the record shows otherwise. S.C. testified that S.D. did wrong things to her; that he did the same things to her sister; that she told her mother about some of these acts and told her the truth; and that she initially had this conversation with her mother when S.D., her mother, and her sister

stopped at a grocery store. Her mother's testimony corroborated S.D.'s. Given S.C.'s mental ability at the time and her ability to relate contemporaneous events, substantial evidence supports the juvenile court's finding that S.C. had satisfied the second and third *Allen* factors.

C. FOURTH AND FIFTH *ALLEN* FACTORS

The juvenile court made the following finding on the fourth and fifth *Allen* factors–having the capacity to express in words her memory of the occurrence and having the capacity to understand simple questions about the occurrence:

> 4. [S.C.] has the capacity to express in words her memory of the incident. [S.C.] frequently stated she did not remember or did not know details of any sexual incidents with the respondent[.] The issue in this factor, however, is only that she have the capacity to express her memory in words. [S.C.] testified about things that occurred at the same time period as the charged incidents, and she testified about things that occurred before then, so she had the capacity to express her memories in words[.] [S.C.] also gave answers that tracked the questions being asked of her, and answered them with words that made sense, both in content and grammar.

> 5. [S.C.] has the capacity to understand simple questions about the incident. She showed no difficulty in answering questions on both direct and cross-examination, and she demonstrated her ability to ask to have a question repeated or clarified for her if she did not understand it. There was no evidence that S.C. lacked the capacity to understand simple questions.

CP at 52.

S.D. argues that the juvenile court erred in finding that S.C. met these factors because she did not remember the details of the incident. Again, we disagree. As with the previous factor, that S.C. testified she did not remember the details of the specific incidents does not mean that she did not have the *capacity* to express in words her memory of what had happened or the *capacity* to understand the questions about the incident. *See Avila*, 78 Wn. App. at 736 (upholding competency determination where child did not testify about abuse at the child competency and child hearsay

hearing); *Przybylski*, 48 Wn. App. at 665–66 (trial court need not examine the child witness about particular issues and facts in the case to determine competency). As described above, S.C. testified extensively about contemporaneous facts and was able to express herself clearly when asked questions about contemporaneous events. Thus, she had the *capacity* to understand questions and to express her memories. Thus, substantial evidence supports the juvenile court's finding that S.C. met the fourth and fifth *Allen* factors.

Because substantial evidence supports the juvenile court's findings I–V on the *Allen* factors, S.D. fails to show that the juvenile court erred. Accordingly, we hold that the juvenile court did not abuse its discretion when it found that S.C. was competent to testify and we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

MELNICK, J.

13