THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 82537-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KEVIN CARSON, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — Kevin Carson appeals his conviction for first degree rape of a child and child molestation. He argues that the trial court erred in giving the jury a non-corroboration instruction, denying his request for public funds for a Special Sex Offender Sentencing Alternative (SSOSA) evaluation, denying his motion to substitute counsel, and imposing an exceptional minimum sentence without making the requisite findings of fact. We reject each argument and affirm.

<u>FACTS</u>

Kevin Carson was convicted of first degree rape of a child and first degree child molestation for crimes occurring between 2015 and 2018. The victim, A.M.B., Carson's step-granddaughter, was six years old at the time the charges were filed. Carson's wife, Dawn Carson, is A.M.B.'s biological grandmother.

Citations and pin cites are based on the Westlaw online version of the cited material.

A.M.B. routinely stayed with the Carsons throughout her life. Because Dawn worked 30 hours a week, Carson was regularly alone with A.M.B. during her visits.

On August 27, 2018, A.M.B. came home after staying with the Carsons for five days. A.M.B. told her mother that Carson had showed her pornographic videos, made her touch his penis, put lubricant on her vagina, and used a vibrator on her. A.M.B.'s parents took her to CARES Northwest, a child abuse treatment provider in Portland, Oregon, where she underwent a medical examination by Dr. Adebimpe Adewusi, participated in a forensic interview conducted by Rachel Petke, and later saw Kim Jacobwitz for counseling. A.M.B. repeated her allegations to each of these individuals. When police searched the Carsons' home, they seized a vibrator, essential oils, and Carson's phone containing pornographic images.

A.M.B. testified at trial that Carson touched her sexually on multiple occasions. A.M.B.'s parents and the three CARES Northwest witnesses also recounted A.M.B.'s statements describing multiple instances of sexual abuse. Carson testified, denying the abuse.

At the close of trial, the State proposed a set of jury instructions, including instruction number 16, which states "[i]n order to convict a person of the crime of Child Molestation in the First Degree or Rape of a Child in the First Degree as defined in these instructions, it is not necessary that the testimony of the alleged victim be corroborated." Carson objected to this instruction, arguing it was an

improper comment on the evidence. The court overruled Carson's objection and included it in the jury's instructions.

The jury convicted Carson and found, by special verdict, that Carson had used a position of trust or confidence to facilitate the commission of his crimes. Before sentencing, Carson requested the appointment of new counsel based on the alleged lack of communication with his trial lawyer. The court granted Carson's request and appointed James Sowder to represent Carson. A month later, in October 2019, at Carson's request, Sowder moved to withdraw. The court denied this motion and set sentencing for November 6, 2019.

On November 5, 2019, the day before the scheduled sentencing hearing, Carson moved for a new trial, to continue sentencing, and for an order approving the expenditure of public funds for a SSOSA evaluation. At the November 6 hearing, the court refused to consider the motions without first allowing the State an opportunity to brief the issues. It set a hearing to address all the pending motions and reset sentencing for December 18, 2019.

On December 3, 2019, Carson filed a motion in support of a SSOSA sentence. The State submitted a brief in opposition to Carson's motion for a new trial, and a sentencing memorandum opposing a SSOSA as too lenient and as contrary to the wishes of the victim.

The court considered the pending motions at the December 18 hearing. In considering the motion for a SSOSA sentence and the requested evaluation, the court considered the statutory factors governing the suitability of a SSOSA sentence in RCW 9.94A.670(4) and denied the motions because Carson had

denied any wrongdoing, the sentence would be too lenient, it would not address the court's community safety concerns, and the victim opposed a SSOSA sentence. The court concluded that an evaluation from a sex offender treatment provider would not affect his determination that a SSOSA sentence was inappropriate. In light of this ruling, the court denied the motion for the expenditure of public funds for an evaluation and the request to continue the sentencing hearing.

The court sentenced Carson to an exceptional minimum term of 180 months in prison based on the jury's abuse of trust finding. Carson appeals.

ANALYSIS

A.      Non-Corroboration Instruction

Carson first argues that instruction 16 is an impermissible judicial comment on the evidence. We must reject this argument because we are bound by Washington Supreme Court precedent to the contrary.

We review challenges to jury instructions de novo. State v. Jackman, 156 Wn.2d 736, 743, 132 P.3d 136 (2006). "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. Jury instructions that accurately state the law are not improper comments on the evidence. State v. Yishmael, 195 Wn.2d 155, 174, 456 P.3d 1172 (2020). Jury instructions that resolve factual issues posed to the jury, convey a judge's personal attitudes towards the merits of the case, or indicate how much weight is afforded a piece of evidence constitute an improper comment. Id. at 175;

State v. Deal, 128 Wn.2d 693, 703, 911 P.2d 996 (1996); In re Det. Of R.W., 98 Wn. App. 140, 144, 988 P.2d 1034 (1999).

Instruction 16 stated, "[i]n order to convict a person of the crime of Child Molestation in the First Degree or Rape of a Child in the First Degree as defined in these instructions, it is not necessary that the testimony of the alleged victim be corroborated." The language is taken verbatim from RCW 9A.44.020(1), which provides that "[i]n order to convict a person of any crime defined in [chapter 9A.44 RCW] it shall not be necessary that the testimony of the alleged victim be corroborated."

Washington courts have repeatedly held that a non-corroboration instruction is not an impermissible comment on the evidence. See State v. Clayton, 32 Wn.2d 571, 572-74, 202 P.2d 922 (1949) (court upheld instruction stating "a person charged with attempting to carnally know a female child under the age of eighteen years may be convicted upon the uncorroborated testimony of the prosecutrix alone"); State v. Chenoweth, 188 Wn. App. 521, 535, 354 P.3d 13, review denied, 184 Wn.2d 1023 (2015) (court upheld instruction stating "[i]n order to convict a person of incest[,] it shall not be necessary that the testimony of the alleged victim be corroborated"); State v. Zimmerman, 130 Wn. App. 170, 180-83, 121 P.3d 1216 (2005) (same). We are bound by this precedent and hold the trial court did not err in giving instruction 16 because it is an accurate statement of the law and not an impermissible comment on the evidence.[1]

---

[1] We note that our Supreme Court recently granted a petition for discretionary review on the issue of the constitutionality of an identical non-corroboration jury instruction in State v. Svaleson, 195 Wn.2d 1008, 458 P.3d 790 (2020). The petitioner explicitly asked the court to overrule Clayton. However, when the petitioner died, the Supreme Court granted the State's motion to dismiss the

Carson seeks to distinguish this case by arguing that instruction 16, when considered in the context of instruction 3,[2] "expressly told the jury that it could not question A.M.B.'s accusation based upon the lack of corroboration." But instruction 16 gave the jury no such command. It simply stated that corroborating evidence is not required as a matter of law. It made no comment about the weight the jury should give to A.M.B.'s testimony. Instruction 3 clearly says that a lack of evidence may give rise to reasonable doubt. The trial court did not make an impermissible comment on the evidence through instruction 16.

B.    SSOSA Evaluation

Carson next argues the trial court erred when it denied his motion for the expenditure of public funds for a SSOSA evaluation. We disagree.

RCW 9.94A.670 lays out a three-step process for considering a SSOSA sentence. First, the court must determine whether the defendant meets the eligibility criteria in RCW 9.94A.670(2). An offender is eligible for the special sex offender sentencing alternative if:

> (a) The offender has been convicted of a sex offense other than a violation of RCW 9A.44.050 or a sex offense that is also a serious violent offense. . . .
> (b) The offender has no prior convictions for a sex offense as defined in RCW 9.94A.030 or any other felony sex offenses in this or any other state;
> (c) The offender has no prior adult convictions for a violent offense that was committed within five years of the date the current offense was committed;
> (d) The offense did not result in substantial bodily harm to the victim;

___

appeal. See Order Granting Motion to Dismiss, State v. Svaleson, No. 96034-8 (Wash. Aug. 5, 2020). We remain bound by the holding in Clayton.

[2] Stating in part, "[a] reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence."

(e) The offender had an established relationship with, or connection to, the victim such that the sole connection with the victim was not the commission of the crime; and
(f) The offender's standard sentence range for the offense includes the possibility of confinement for less than eleven years.

RCW 9.94A.670(2). The parties do not dispute that Carson was statutorily eligible for a SSOSA sentence.

Second, "[i]f the court finds the offender is eligible for this alternative, the court . . . may order an examination to determine whether the offender is amenable to treatment." RCW 9.94A.670(3). The use of the permissive "may" in RCW 9.94A.670(3) establishes that the legislature conferred on the trial courts "not only the discretion to order the necessary evaluation but to order the expenditure of public funds when the initial evaluation is ordered for an indigent defendant." State v. Young, 125 Wn.2d 688, 695, 888 P.2d 142 (1995).[3] The statute does not mandate a SSOSA evaluation whenever a defendant requests one.

Third, if the court has received a SSOSA evaluation, the statute sets out six factors the court must consider in deciding whether to grant a SSOSA sentence:

> After receipt of the [evaluation] reports, the court shall consider whether the offender and the community will benefit from use of this alternative, consider whether the alternative is too lenient in light of the extent and circumstances of the offense, consider whether the offender has victims in addition to the victim of the offense, consider whether the offender is amenable to treatment, consider the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim, and consider the victim's opinion whether the offender should receive a treatment disposition under this section. The court shall give great weight to the victim's opinion whether the offender should receive a treatment disposition under this section.

---

[3] Young addressed the former RCW 9.94A.120(7)(a)(i), which contained the same language as the current RCW 9.94A.670(2). 125 Wn.2d at 693-94.

RCW 9.94A.670(4).

Carson argues that the trial court abused its discretion in denying his request for a SSOSA evaluation because it failed to follow the "correct statutory procedure" when it decided a SSOSA was not appropriate in this case without the benefit of evaluation reports. Although the typical process would be for the court to decide whether to order an evaluation before conducting the sentencing hearing—to give a defendant time to have the evaluation completed—the statute does not mandate this process.

The question here is whether the trial court abused its discretion in postponing its decision on Carson's request for a SSOSA evaluation to coincide with the sentencing hearing itself and then in concluding that a SSOSA was inappropriate without having first ordered or considered an evaluation. Under the facts of this case, we find no abuse of discretion.

First, the court considered Carson's motion at a November 6, 2019 hearing but was unwilling to rule until the State had the opportunity to respond in writing. This decision was well within the court's discretion.

Second, the purpose of a SSOSA evaluation is to determine a particular defendant's amenability to sex offender treatment. See RCW 9.94A.670(3) ("[T]he court . . . may order an examination to determine whether the offender is amenable to treatment"). Amenability to treatment is only one of six factors a trial court must consider in deciding if this alternative to incarceration is appropriate. A trial court acts within its discretion in deciding that, even if a defendant is amenable to treatment, a SSOSA is inappropriate because of any of the other five listed factors.

Here, the court assessed each of the six factors in RCW 9.94A.670(4) and concluded that, even if Carson underwent an evaluation and was deemed amenable to treatment, several of the other statutory factors operated against granting his SSOSA request. The court particularly found that the nature of Carson's crimes, occurring over several years, made the alternative too lenient and the victim's opposition weighed heavily against it. It was for these reasons the court stated "I don't think it makes sense at this point to expend state resources . . . where -- I'm not sure the information, [the SSOSA evaluation], would give to change those factors, in particular the victim's opinion."

We cannot conclude the trial court abused its discretion here. The court sought written input from the State, evaluated the correct statutory factors, and concluded that Carson's amenability to treatment could not overcome the victim's strong opposition to a SSOSA and the court's conclusion that a SSOSA sentence would be too lenient. RCW 9.94A.670(4) clearly directs trial courts to "give great weight to the victim's opinion whether the offender should receive a treatment disposition under this section." The court did not abuse its discretion in following this statutory directive.

Although we caution trial courts against prejudging the appropriateness of any particular alternative sentence, a court is within its discretion, after providing both parties the opportunity to address the appropriateness of a SSOSA, to deny that request and to conclude that an evaluation would be unnecessary.[4]

---

[4] The State argues that a trial court's decision to grant or deny an indigent defendant's request for public funds for a SSOSA evaluation is governed by CrR 3.1(f), which provides that a court shall authorize expert services at public expense where it is "necessary to an adequate defense." The trial court, however, did not invoke CrR 3.1(f) or deny the motion based on a finding that the

C.      Motion to Substitute Counsel

Carson next argues that the trial court erred when it denied his second request for a substitution of counsel. He contends the trial court failed to conduct an adequate inquiry into his complaints and impermissibly based its denial on a personal assessment of defense counsel's skills. We reject both arguments.

This court reviews a trial court's decision denying a motion to substitute counsel for abuse of discretion. State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). The Sixth Amendment of the U.S. Constitution and article I, section 22 of the state constitution ensure a defendant's right to counsel at all stages of a criminal proceeding. U.S. v. Gonzalez-Lopez, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). The Sixth Amendment, however, does not provide an indigent defendant an absolute right to counsel of his choice. Varga, 151 Wn.2d at 200. "To justify appointment of new counsel, a defendant must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." Id. (quotations omitted).

On review of the denial of a motion for new counsel, this court considers: (1) the extent of the conflict; (2) the adequacy of the trial court's inquiry into the conflict; and (3) the timeliness of the defendant's motion. In re Pers. Restraint of Stenson, 142 Wn.2d 710, 724, 16 P.3d 1 (2001).

Carson made his first request to substitute counsel on September 19, 2019.

---

evaluation was unnecessary to an adequate defense. We note, however, that a trial court does not abuse its discretion under CrR 3.1(f) in denying such a request where, as here, the evaluation would be used solely for sentencing purposes. See State v. Hermanson, 65 Wn. App. 450, 455-56, 829 P.2d 193, review denied, 120 Wn.2d 1016, 844 P.2d 436 (1992).

After an inquiry, the trial court appointed James Sowder as substitute counsel. Less than a month later, on October 15, 2019, Carson filed his motion to discharge Sowder on the basis that Sowder was "too busy to properly represent him." At the following hearing, the court asked Carson if he wished to explain his concerns regarding Sowder's representation, but he declined to do so, instead referring the court to a letter written by his wife, Dawn. Dawn alleged that Sowder was not putting sufficient time into the case and had failed to return her calls.

The court asked Sowder about the work he was doing on the case, as well as the impact an upcoming homicide trial would have on his ability to address Carson's case. The court then concluded that it could find nothing deficient in Sowder's work, that Sowder was a "very thorough attorney," and Sowder's homicide trial had "gone away," giving him time to attend to Carson's case. The court expressed concern that if it appointed new counsel, the case would be further delayed. It denied the motion on this basis.

We see no abuse of discretion in the court's determination that Sowder was providing effective legal services to Carson and had sufficient time to provide him an adequate representation, and that substituting counsel at that stage would have the negative effect of delaying sentencing. Carson has not demonstrated that the court's inquiry was inadequate or that communication between Carson and Sowder had broken down. Dawn's letter laid out bare accusations that Sowder had not returned her calls and that she was dissatisfied with the time Sowder had invested in the case. The letter did not demonstrate that Sowder's work was so deficient as to deny Carson adequate representation. It contained no allegations

of an irreconcilable conflict between attorney and client or a breakdown in communication between the two.

Carson criticizes the court for relying on its assessment of Sowder's capabilities, arguing it demonstrated the court's bias in favor of the attorney and against the defendant. But it is well-established that in examining a request to substitute counsel, a court must evaluate the adequacy of representation. State v. Schaller, 143 Wn. App. 258, 270, 177 P.3d 1139 (2007). If legal representation is found to be inadequate, courts must presume prejudice; if that representation is adequate, then a defendant must demonstrate prejudice. Id. When the trial court commented on its assessment of Sowder's legal services, it was undertaking a necessary evaluation of whether Carson was receiving the effective representation of counsel to which he was entitled under the Sixth Amendment. It did not demonstrate bias.

Carson has thus failed to establish that the denial of his motion to substitute counsel was an abuse of discretion.

D.    Exceptional Minimum Sentence

Carson next contends the court failed to make adequate factual findings to support an exceptional minimum sentence of 180 months. We again disagree.

RCW 9.94A.535 provides:

> The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. Facts supporting aggravated sentences, other than the fact of a prior conviction, shall be determined pursuant to the provisions of RCW 9.94A.537. Whenever a sentence outside the standard sentence range is imposed, the court shall set forth the

reasons for its decision in written findings of fact and conclusions of law.

RCW 9.94A.537(6) provides:

> If the jury finds, unanimously and beyond a reasonable doubt, one or more of the facts alleged by the state in support of an aggravated sentence, the court may sentence the offender pursuant to RCW 9.94A.535 to a term of confinement up to the maximum allowed under RCW 9A.20.021 for the underlying conviction if it finds, considering the purposes of this chapter, that the facts found are substantial and compelling reasons justifying an exceptional sentence.

Carson argues the trial court did not specifically find that the jury's special verdict was a substantial and compelling reason justifying the exceptional sentence, and that the sentence must be vacated, citing State v. Friedlund, 182 Wn.2d 388, 394, 341 P.3d 280 (2015). First, we reject Carson's argument that the court did not make the requisite statutory factual findings. The standard range for Carson's crimes was 120 to 160 months. The jury found, however, that Carson "use[d] a position of trust or confidence to facilitate the commission of the crime[s]." Under RCW 9.94A.535(3)(n), this finding "can support a sentence above the standard range."

At sentencing, the court found that the jury's finding was a "substantial and compelling reason[] to justify an exceptional sentence upward on Counts I and II." The court made a similar written finding in the judgment and sentence:

2.4 ☒ **Exceptional Sentence**. The court finds substantial and compelling reasons that justify an exceptional sentence:
☐ below the standard range for Count(s) _____.
☒ above the standard range for Count(s) __1_,_2__.
  ☐ The defendant and state stipulate that justice is best served by imposition of the exceptional sentence above the standard range and the court finds the exceptional sentence furthers and is consistent with the interests of justice and the purposes of the sentencing reform act.
  ☒ Aggravating factors were ☐ stipulated by the defendant, ☐ found by the court after the defendant waived jury trial, ☒ found by jury, by special interrogatory.

- 13 -

Second, Friedlund does not support Carson's argument. In that case, the issue was whether a court's oral findings were sufficient to satisfy the requirements of the SRA where the court failed to enter any written findings on the exceptional sentence it imposed. Id. at 390-92. In this case, the court did make an oral ruling, but it followed that ruling up with clear written findings in the judgment and sentence.

Carson contends the court's written findings are insufficient because they lack "an analysis of what specific facts at this trial justified increasing Mr. Carson's sentence." This court rejected the converse argument in State v. Sage, 1 Wn. App. 2d 685, 709, 407 P.3d 359 (2017). In that case, the defendant contended the trial court had engaged in prohibited fact-finding regarding an exceptional sentence. The court concluded:

> The only permissible "finding of fact" by a sentencing judge on an exceptional sentence is to confirm that the jury has entered by special verdict its finding that an aggravating circumstance has been proven beyond a reasonable doubt. Then it is up to the judge to make the legal, not factual, determination whether those aggravating circumstances are sufficiently substantial and compelling to warrant an exceptional sentence.

Id.

In Sage, as here, the sentencing court found that the jury had found the existence of a statutory aggravating factor beyond a reasonable doubt and concluded that the jury's findings were substantial and compelling reasons for an exceptional sentence. Id. at 710. The court, as here, included this written finding and legal conclusion in an appendix to the judgment and sentence. Id. Under Sage, no further fact-finding by the sentencing court is required or indeed, allowed. This argument fails.

- 14 -

E. Statement of Additional Grounds

Finally, Carson raises two arguments in his statement of additional grounds. He first contends the trial court erred in failing to administer an oath to A.M.B. before allowing her to testify. This is not reversible error for three reasons. First, where the witness is a child, the trial court is not required to administer a formal oath. See State v. Collier, 23 Wn.2d 678, 694, 162 P.2d 267 (1945); See also State v. Dixon, 37 Wn. App. 867, 876, 684 P.2d 725 (1984). Instead, ER 603 requires the court to elicit some type of assurance that the witness will tell the truth before being allowed to testify. State v. Avila, 78 Wn. App. 731, 737-38, 899 P.2d 11 (1995). This court held in Dixon that "the requirements of ER 603 are met when a child demonstrates an understanding of the difference between truth and falsity, is adequately apprised of the importance of telling the truth and declares that he will do so." 37 Wn. App. at 876. In that case, the requirements of ER 603 were met where the prosecuting attorney asked the child witness a series of questions regarding his understanding of the different between truth and falsity and the importance of telling the truth. Id. at 875-76.

The prosecutor here asked A.M.B. the same types of questions, including asking "can you promise that you will only tell the truth today?" To which A.M.B. responded yes.

Second, even if the trial court did commit error, Carson has waived it by failing to object to A.M.B.'s testimony on this basis at trial. See Dixon, 37 Wn. App. at 876 (failure to object at trial to admission of testimony of child witness who has not been administered a formal oath constitutes a wavier).

Lastly, even if the issue were properly preserved, the error did not prejudice Carson and cannot constitute grounds for a new trial or reversal. Five other witnesses besides A.M.B. herself testified about her statements about the abuse. In light of this evidence, A.M.B.'s testimony did not affect the outcome of the trial. See Avila, 78 Wn. App. at 738-39 (error not prejudicial where unsworn child testimony was supplemented with other testimony consistent with child's description of abuse).

Carson also argues that A.M.B's parents, Charles Bertholomey and Morgan Cooksey, committed perjury because, despite the charging period of May 16, 2015 to August 28, 2018, Bertholomey and Cooksey testified that A.M.B. "had no issues" before August 27, 2018. We assume Carson is referring to Bertholomey's testimony that A.M.B. did not experience persistent nightmares or anxiety prior to August 27, 2018, and Cooksey's testimony that prior to August 27, A.M.B. appeared happy when she returned from visits to Carson's house.

Carson fails to demonstrate how this testimony amounts to perjury or precludes the possibility that his crimes spanned the three-year period between May 2015 and August 2018. To the extent that he argues that there is insufficient evidence supporting his conviction for crimes that occurred before August 2018, his argument fails. A.M.B. testified that Carson sexually abused her on multiple occasions before she finally reported it in August 2018. Her counselor, Kim Jacobwitz, corroborated this testimony. And contrary to Carson's argument, A.M.B.'s parents testified that on multiple occasions prior to August 2018, the child returned from staying with the Carsons with physical symptoms consistent with

sexual abuse.  We therefore reject this argument as well.

Affirmed.

_Andrus, A.C.J._

WE CONCUR:

_Coburn, J._          _Appelwick, J._